[Crim. No. 7592. Third Dist. Apr. 16, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
ALLEN EDWARD BUTLER, Defendant and Appellant.

274

## COUNSEL

George H. DuFort and Eric J. Bathen, Jr., under appointments by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and William G. Prahl, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JANES, J.**—Defendant was charged by information with oral copulation (Pen. Code, § 288a), attempted forcible rape (Pen. Code, §§ 261, subd. 2, 664), and attempted rape by threat of harm (Pen. Code, §§ 261, subd. 3, 664). ■ ■■■ He was convicted by jury on the charges of oral copulation and attempted forcible rape. Sentenced to state prison on both counts,[1] the sentences to be served concurrently, he appeals from the judgment.

---

[1] Not raised by the parties is the fact that the court's sentencing violated the proscription of Penal Code section 654 against multiple punishment. The record clearly

■ The principal contention advanced by defendant, which we will sustain, is that the trial court committed prejudicial error by refusing the jury's request, midway in its deliberation, that the testimony of five witnesses be reread. In view of the fact that our resolution of the contention will be dispositive of the appeal, our recitation of the facts will be confined almost wholly to the testimony of those five witnesses.

## THE RELEVANT FACTS

The prosecution's first witness was Tammy U. ("Tammy"), the 14-year-old victim. On December 21, 1973, at 3:30 in the afternoon, Tammy went to the home of Mrs. Holliday, two doors from Tammy's home, to babysit Mrs. Holliday's two children. Tammy put the children to bed at approximately 9:30 p.m., watched television until some time after 1 a.m., then fell asleep. Sometime thereafter, Tammy awakened to find defendant in the room changing channels on the television set.[2] Defendant, whom Tammy had previously met, was 28 years old and Mrs. Holliday's current boyfriend. After defendant could not find a channel on the television set, he came to where Tammy was sitting and sat down on the arm of her chair. He put his arm around Tammy, fondled her breasts, and there followed, in the living room, the kitchen, backyard, and garage (and over a considerable period of time) the sordid events supporting the charges and detailed at length in the reporter's transcript of Tammy's testimony.

Mrs. Holliday returned home at 3 a.m. She found Tammy on the couch and defendant sitting in a chair. She walked Tammy home at approximately 3:30 a.m. Tammy said nothing to Mrs. Holliday, but as soon as she reached home she told her parents what had happened. Her parents testified that Tammy was hysterical. A doctor was called by Tammy's mother and Tammy was given a bath. Meanwhile, her father went to the Holliday home and confronted defendant, who denied Tammy's accusation.

Tammy was examined about 4 a.m. by Dr. Walter Mazen (called as a defense witness at trial). Dr. Mazen testified that after thorough

indicates that the offenses constituted an indivisible transaction, incident to a single objective. Accordingly, punishment may properly be imposed only for the more severely punishable offense. We do no more than advert to the issue in view of our conclusion that the judgment must be reversed.

[2]Defendant's entry into the house had been observed by a neighbor who lived across the street, and had seen defendant attempt to open the front door of the Holliday house at 1:30 a.m. Both the neighbor and Tammy's father saw defendant's pickup truck parked in front of the neighbor's house at that time.

examination he found no evidence of bruises or violence, but did find her emotionally disturbed, crying and upset, with a rapid pulse. He also determined that she was still a virgin.

Mrs. Holliday testified that prior to leaving her home the afternoon of December 21, the garage (in which Tammy's testimony placed much of the activity) had been straightened up and was very neat, but that after returning home she noticed that clothes which had been hung in the garage were in a little pile in the middle of the garage floor and that a package of cigarettes and a lighter were on the floor along with the clothes. The cigarettes and lighter were identical to those used by defendant. She also found, on the kitchen floor, a bracelet which Tammy had worn when she came to the Holliday home to babysit. Mrs. Holliday also testified that she kept a key to the back door on a shelf in the garage, a fact of which defendant was aware, and that the key was missing from the garage after December 21.

The defense presented was one of good character for honesty and peacefulness, and of alibi for the time period in question. Defendant testified consistently with his alibi witnesses, and further that he arrived at the Holliday home shortly before Mrs. Holliday's arrival, went to the front door and knocked, and that when Tammy opened the door there was a young boy standing behind her, approximately 16 to 19 years of age and with long brown hair; the boy left the house immediately upon defendant's arrival. Defendant's mother corroborated defendant's testimony in part and also stated that his reputation for peacefulness and honesty was good.

## DISCUSSION

The case went to the jury at 1:32 p.m. on the third day of trial. At 4:12 p.m. court was reconvened at the request of the jury. The following exchange occurred:

"THE COURT: . . . Let the record show that the jury is in the box. The defendant is in attendance as are respective counsel. I understand the jury has some question?

"THE FOREMAN: Yes Your Honor. My voice is very small. We would like to hear the testimony of all of Tammy's. We'd like to hear the testimony of the doctor, of Mr. Butler and his mother. And Mrs. Holliday.

"THE COURT: That's practically the whole trial.

"THE FOREMAN: That's yes. Some of it was so faint we couldn't really hear it correctly, clear.

"THE COURT: I wish to ask the Jury Foreman if you—I don't want to know how you voted, but have you voted on any of the counts?

"THE FOREMAN: We've not taken a formal vote, no.

"THE COURT: Counsel come to the bench please."

The following proceedings were then had at the bench, outside the hearing of the jurors, with counsel and the defendant before the court:

"THE COURT: We'll be here forever. What do you think?

"MR. BATHEN: [defense counsel]: Appears so.

"THE COURT: It appears so.

"MR. BATHEN: Appears so.

"THE COURT: Totally a retrial practically. Do you have anything to offer?

"MR. WASHINGTON [prosecutor]: How many witnesses are there?

"THE COURT: Five.

"MR. BATHEN: Those were the major ones.

"MR. WASHINGTON: Well if they haven't even taken a vote yet maybe you could ask them to do that first.

"MR. BATHEN: Maybe have them take a vote on it first and then we could read it back.

· "THE COURT: I think I'll not have it all read. That's practically a retrial.

"MR. BATHEN: Take about two days to reread on the thing.

"The Court: Take a day.

"Mr. Washington: Take half a day I'm sure.

"Mr. Bathen: At least that.

"The Court: Okay. I mean I've never heard of this type procedure before. Were you ready? Did you have something further you wanted to say?

"Mr. Washington: Well I don't know of, I've heard of readback before, but I've never heard, never had a readback that was that long. Of course we can always try it again."

At the conclusion of the foregoing discussion at the bench by the court and counsel, the proceeding was resumed before the jury as follows:

"The Court: I appreciate your request Ladies and Gentlemen of the Jury and I know the importance of the case, but to reread what you have asked to be reread would perhaps take a full day. And you I trust will go back into the jury room and do your very best to arrive at a verdict *based on the information that you have.* Thank you for making the request, but it has to be denied. Go back and give it a good try." (Italics added.)

At 4:18 p.m. the jury left the courtroom to resume deliberation. Shortly after 5 p.m. the court reconvened the jury, asked them whether they had voted and how they stood. The reply was nine to three. In response to the court's further question, the jury foreman expressed the jury's feeling that it would be able to reach a verdict upon further deliberation. Again the jurors returned to their task. At 7:47 p.m. court reconvened briefly, at the jury's request, for a rereading of the instruction defining oral copulation and reinstruction on the question of intent as applied to the offense of oral copulation. At 8:03 p.m. the jury returned with its verdicts.

Penal Code section 1138, virtually unchanged from the form in which it was originally enacted in 1872, provides as follows: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be

given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

Defendant's contention that the trial court committed prejudicial error by denying the jury's request for rereading of the indisputably key testimony is grounded upon the relationship of the claimed statutory mandate of Penal Code section 1138 to the fundamental right of an accused to a fair trial, conducted substantially in accordance with law. (See *People* v. *Weatherford* (1945) 27 Cal.2d 401, 420 [164 P.2d 753].) The Attorney General resists the contention upon the mechanical suggestion that since the jury's request to the court did not indicate any "disagreement" among the members of the jury as to the testimony in the case, no requirement existed under section 1138 that the testimony be reread.[3] *(People* v. *Stafford* (1973) 29 Cal.App.3d 940 [106 Cal.Rptr. 72], discussed *infra.*) The argument of the Attorney General ignores a respectable line of authority which holds that upon request by the jury for the rereading of testimony, such assistance must be given.

In *People* v. *Henderson* (1935) 4 Cal.2d 188 [48 P.2d 17], the jury requested that all testimony relating to the time the victim had been present at specified places be reread. In complying with the request certain relevant testimony was omitted. In reversing the conviction, the Supreme Court stated: "Who can say that the jury, in their five-hour deliberation, might not have reached an opposite conclusion had they had the benefit of having reread to them that which they requested, to wit: all of the testimony touching the element of time . . . ." (4 Cal.2d at p. 194; see also, *People* v. *De La Roi* (1944) 23 Cal.2d 692, 701 [146 P.2d 225, 151 P.2d 837]; *People* v. *York* (1969) 272 Cal.App.2d 463, 466 [77 Cal.Rptr. 441].)

As made evident by our brief summary of the facts, the testimony here requested to be reread was that of the key witnesses in the case—both sides of the case, including that of the victim, whose version of the incident had been attacked, and that of the defendant, whose story was not wholly implausible. By returning the jury to the jury room to

---

[3]As the Attorney General puts it in his brief, "In the instant case, the record does not indicate that there was a disagreement among the jurors as to the testimony of any of the witnesses which they had requested. The jury foreman simply indicated that 'some of it was so faint we couldn't really hear it correctly, clear.' However, the foreman also indicated that they had not taken a formal vote before making the request. Thus, since the jury had not voted, there was no evidence of any disagreement and without such a disagreement, the trial court was not required under section 1138 to re-read the testimony."

deliberate *on the basis of what information it did have,* the court may very well have minimized, in the minds of the jurors, the significance of the testimony they had requested. Moreover, logic and common sense warrant the assumption that one or more of the jurors, in agreeing to the verdicts, may have been caused by the court's rebuff to blend a degree of speculation or surmise into that part of the testimony that they had heard and understood, or—even more costly to the judicial process—may have surrendered their independent judgment to those who professed better hearing and memory.[4]

The court was not without guidance in its moment of confusion and indecision. No attempt was made by the court to attempt a narrowing down to portions of the particular witnesses' testimony in order to satisfy the jury's request (see *People* v. *Gordon* (1963) 222 Cal.App.2d 687 [35 Cal.Rptr. 335]) or to "pinpoint" what the jurors wanted (see *People* v. *Sprinkle* (1962) 201 Cal.App.2d 277 [19 Cal.Rptr. 804]). Had such attempts been made, successfully, it is at least conceivable that the court and counsel, acting together, might have been able to reach stipulations as to the testimony or to prepare a summary for the jury, as was done in *People* v. *Dreyer* (1945) 71 Cal.App.2d 181 [162 P.2d 468], where compliance with a jury request would have required four hours to read the requested testimony. Absent strong supervision by the trial court, and in the face of an outright rejection of the jury's request, the appellate court is put in that position that we cannot say, or even speculate, what effect the rereading of the requested testimony would have had or what effect was created by the failure to reread that testimony.

We turn to the cases upon which the Attorney General relies in support of his position, all of which are factually distinguishable from the instant case. In *People* v. *Gonzales* (1968) 68 Cal.2d 467 [67 Cal.Rptr. 551, 439 P.2d 655], the jury requested the rereading of certain testimony. The court advised the jury that the court reporter would be unable to have his notes ready until the following day, the request having come about 3:30 p.m. The court did not state that the testimony would not be reread, but advised the jury that deliberation could be continued if the jury wished. Fifteen minutes later the jury returned a verdict. (*Id.* at p. 472.) In affirming the conviction the Supreme Court held that the trial court had not erred in receiving the verdict without having the requested

---

[4]Examination of the reporter's transcript discloses numerous occasions upon which witnesses were admonished to keep their voices up because they were not being heard; Tammy, the victim, was so admonished on four occasions. The transcript further reveals that the court itself had difficulty hearing statements made to it by counsel, by jurors, and by a court attaché.

testimony reread because it was clear that the court had intended to comply with the jury's request, but "before the court was able to fulfill the request the jury manifestly decided that the reading of the testimony was unnecessary." (*Id.* at pp. 472-473.)

In *People* v. *Stafford, supra,* 29 Cal.App.3d 940, the jury, after deliberating all afternoon and evening, requested through the bailiff at 11 p.m. that certain testimony be reread. Out of the presence of the jury, but with counsel and the defendant present, the court stated that it proposed to declare a mistrial unless there was an objection, because no facilities had been made available for overnight lodging of the jury. The prosecutor objected, but defense counsel did not. Court was then convened and the judge told the jurors that he could not have the requested testimony read for them because of the lateness of the hour and the fact that there was no overnight lodging available for them; that the jury would be dismissed unless it desired to continue deliberating for a short time despite the absence of the testimony. The jury made the decision to retire and take another vote. Shortly thereafter it returned a verdict of conviction. (*Id.* at pp. 942-943.) The Court of Appeal upheld the action of the trial court by analogizing the case before it to the case of *People* v. *Gonzales, supra,* 68 Cal.2d 467, and two other cases, *People* v. *Warren* (1900) 130 Cal. 678 [63 P. 87], and *People* v. *Slaughter* (1917) 33 Cal.App. 365 [165 P. 44].[5]

In *People* v. *Warren, supra,* 130 Cal. 678, the first of the latter cases, the jurors had deliberated for about three hours. They came into court after 11 p.m. and requested the testimony of a specific witness. Two hours would have been required for the rereading and the court fixed 9 o'clock the next morning as the time for such rereading, adjourning court until that time. A few minutes before 9 a.m., the jury announced its verdict of guilty. The Supreme Court held that the court had not denied the reading of the testimony, noting that there was no obligation on the court "to remain in session all night for the purpose of having testimony read to the jury." (130 Cal. at pp. 681-682.)

---

[5]The *Stafford* court took note of that portion of Penal Code section 1138 which provides for a rereading of testimony, upon request by the jury, "if there be any disagreement between them as to the testimony." (In *Stafford,* as in the case at bench, there was no indication that the jury had taken a formal vote prior to its request for the reading of testimony and therefore no direct expression of any "disagreement.") *Stafford* does not turn, however, upon the lack or technicality of such mechanical indicia of "disagreement" (see fn. 3, *supra,* and accompanying text), but upon whether, under the circumstances there present, defendant was deprived of a substantial right under the subject statute. (29 Cal.App.3d at pp. 944-945.)

In *People* v. *Slaughter, supra,* the second case analyzed in *Stafford,* after several hours of deliberation the jury requested rereading of a portion of the testimony. After being advised that it might take some time to locate the testimony, the jury expressed the opinion that it possibly could reach a verdict without it, and did so. Again, under the circumstances, it was held that the defendant had been deprived of no substantial right under Penal Code section 1138. (33 Cal.App. at p. 380.)

In neither *Warren* or *Slaughter,* nor in *People* v. *Gonzales, supra,* 68 Cal.2d 467, did the court actually deny a request by the jury for the rereading of testimony. In most of the cases to which the Attorney General looks for support, the jury required only a short period of further deliberation to reach a verdict. In the case at bench, however, the jury's further deliberation extended over a substantial period of time, and was not undertaken at the jury's option, but upon order of the trial court that the jury resume deliberation on the basis of the testimony that it had heard clearly. On these facts, it is proper to characterize the trial court's action as one of jury coercion as opposed to a helpful attempt to accede to the jury's request in a manner reasonable under the exigencies of the situation. None of the alternatives open to the court were explored, nor was any other option considered.

■ The Attorney General makes much of the fact that defense counsel made no objection to the course undertaken by the trial judge; that in fact defendant's attorney agreed with the court's decision not to have the requested testimony reread.[6] The suggestion is that, conceding error, defendant waived his right to attack the error by deliberately seeking a strategic advantage from the effect of the jury's possible uncertainty or indecision; and that defendant, represented on appeal by the same attorney, should not be allowed to profit unfairly from a knowledgeable election by being afforded a second opportunity to challenge the trial court's decision as reversible error.

The argument hits the wrong target. Although the mandate of Penal Code section 1138 is an important protection for a party, it is the right of the *jury* which is the primary concern of the statute; its provisions do not delegate to the trial judge, the parties, or their attorneys the right to determine the jury's wishes. Hence the relative inaction of defense counsel in the case at bench cannot attenuate the jurors' fundamental

---

[6]The charge is not entirely accurate. Although defense counsel should have objected, but did not, he did suggest to the court, albeit quixotically: "Maybe have them take a vote on it first and then we could read it back."

right to be apprised of the evidence upon which they are sworn conscientiously to act. Least of all can the command of the statute be ignored at the whim of the trial judge or for the convenience of the judge and counsel, particularly when, as here, the outright refusal of the jury's request committed the jury to the questionable task of reaching its decisions on the basis of incomplete evidence imperfectly heard. It is evident that such a proceeding is not one "conducted substantially according to law." (*People* v. *Weatherford, supra,* 27 Cal.2d 401, 420; see also *Asplund* v. *Driskell* (1964) 225 Cal.App.2d 705, 714 [37 Cal.Rptr. 652]; Witkin, Cal. Criminal Procedure, § 519, pp. 529-530.)

█ Whether error of the character we have reviewed is prejudicial to the extent a new trial is required depends upon the facts of the particular case. Here we need not pause long on the Attorney General's contention that the error, if any, was harmless in view of "the overwhelming evidence" against defendant. Viewed alone, the written word lends support to the Attorney General's contention. Our vantage point is the same as that of the court reporter, whose record is not open to criticism. The jurors, as we have seen, were not so fortunate, leaving defendant in an even less enviable position. It requires little imagination to realize that testimony which cannot be heard and understood by the jury can be neither probative nor substantial. We choose to believe, therefore, that characterization of the testimony against defendant as "overwhelming" is an inadvertent exaggeration based upon an untenable premise.

The testimony of the five witnesses—particularly that of Tammy, the defendant, the doctor, and Mrs. Holliday—went to the very essence of the case. As the court stated after the jury's request, "[t]hat's practically the whole trial." On the one hand, Tammy's testimony was the heart of the prosecutor's case; defendant's denial of wrongdoing and his alibi testimony were of similar stature in his defense. The testimony of the doctor and that of Mrs. Holliday were equally important to the parties, and obviously could have great impact on the decisions facing the jury.

In concluding that the error was prejudicial, and requires reversal of the judgment, we cannot improve upon the following definition of "miscarriage of justice," found in *People* v. *Weatherford, supra,* 27 Cal.2d at page 420: █ "The phrase 'miscarriage of justice' (Const., art. VI, § 4½ [now art. VI, § 13]), as said in *People* v. *Wilson,* 23 Cal.App. 513, 524 [138 P. 971], 'does not simply mean that a guilty man has escaped, or that an innocent man has been convicted. It is equally applicable to cases

where the acquittal or the conviction has resulted from some form of trial in which the essential rights of the people or of the defendant were disregarded or denied. The right of the accused in a given case to a fair trial, conducted substantially according to law, is at the same time the right of all inhabitants of the country to protection against procedure which might at some time illegally deprive them of life or liberty.' [Citations.]"

██   Our conclusion that the judgment must be reversed because of prejudicial error in the trial court's denial of the jury request makes it unnecessary for us to address ourselves to defendant's remaining contentions, which attack (1) certain of the court's rulings on the admissibility of evidence, (2) the order denying defendant's motion under Penal Code section 995 to set aside the information, and (3) denial of his motion (now moot) for a new trial. Although each of those contentions has received our attention and been found lacking in merit, no purpose would be served by a detailed analysis or extended discussion of them, in view of our disposition of the appeal.

The judgment is reversed.

Puglia, P. J., and Paras, J., concurred.

A petition for a rehearing was denied May 14, 1975, and respondent's petition for a hearing by the Supreme Court was denied July 3, 1975.