646 P.2d 447

The STATE of Idaho,
Plaintiff-Respondent,

v.

Michael C. COUCH, Defendant-Appellant.

No. 13724.

Court of Appeals of Idaho.

June 8, 1982.

Gerald L. Weston of Gigray, Miller, Downen & Weston, Caldwell, for defendant-appellant.

David H. Leroy, Atty. Gen., Lance D. Churchill, Deputy Atty. Gen., Boise, for plaintiff-respondent.

SWANSTROM, Judge.

A jury found appellant guilty on two counts of delivering cocaine. The deliveries occurred on two separate occasions and were to an undercover police officer. Appellant defended against the charges, claiming entrapment. He now contends that the trial court erred: (1) in admitting into evidence a tape recording of a conversation between the police officer and himself; (2) in allowing the contents of that taped conversation to be read to the jury after they had begun their deliberations; (3) in refusing to grant his motion for a mistrial based on the alleged misconduct of the deputy prosecutor in advising a principal witness to "hide out" in order to avoid being subpoenaed by the defendant; and (4) in refusing to grant a mistrial or dismissal of the charges based on the state's failure to make adequate disclosure of evidence it intended to use at trial. The appellant also maintains that there was insufficient evidence to support the verdict. We affirm appellant's conviction.

Suspicion that appellant was selling cocaine was based on information given to the police by an informant who was then on probation. The information was given to the appellant's arresting officer in exchange for the officer's agreement to "talk to somebody" about restitution owed by the informant to the court. The informant was awaiting a probation revocation hearing due to his failure to pay this restitution in a timely manner.

The informant set up a meeting between appellant and the undercover police officer. The informant drove appellant to the meeting and introduced the officer to the appellant. The informant testified that after the introductions were made he left the car and took a walk. One of the transactions for which appellant was convicted took place in the car at this time. Subsequent to that meeting, the officer telephoned the appellant. The conversation was recorded by the officer via a suction cup device attached to the officer's phone. The appellant was unaware that the conversation was being recorded. No authorization for the recording of the conversation had been obtained from appellant or the phone company. The officer met with the appellant a second time, and again bought cocaine from him.

As the time of trial approached, the informant told the deputy prosecutor that he wouldn't testify for the prosecution; that an officer had promised him he would not have to testify. Hearing that, the deputy recommended that he leave for a couple of weeks in order to avoid being subpoenaed by the appellant's counsel. The informant later testified during an in-camera hearing that the same attorney also told him that, if he did testify and if he "said anything to hurt the prosecution, [his] PV [probation violation] would stand a good chance of going to court, and [the deputy prosecutor] would prosecute it to the fullest." The deputy prosecutor, in his cross-examination of the informant, implied that he had told the informant only to tell the truth if he was subpoenaed as a witness. The informant told the attorney that he would leave his parent's house and go live with some friends. Despite this knowledge, the deputy prosecutor gave defense attorneys the informant's parent's address as the place where the informant could be found.

At trial, the tape recording of the telephone call made by the undercover officer to appellant between their first and second meetings was admitted into evidence and played to the jury. After the jury had retired to deliberate they requested a transcript of the tape recorded conversation. Over appellant's objection the court had the court reporter "read back" the conversation to the jury.

## I.

■ Appellant urges us to find that the officer violated I.C. § 18–6705 when he recorded the telephone conversation between the appellant and himself. This section, as adopted in 1972 Idaho Session Laws ch. 336, p. 968, before its repeal in 1980, provided:

Unauthorized connection with telegraph and telephone wires.—Whoever shall wilfully and maliciously cut, break, tap or make any connection with, any telegraph or telephone wire, or read or copy, by the use of telegraph or telephone instruments or otherwise, in any unauthorized manner, any message, either social or business, sporting, commercial or other news reports, from any telegraph or telephone line, wire or cable, so unlawfully cut or tapped in this state; or make unauthorized use of the same, or who shall wilfully and maliciously prevent, obstruct or delay, by any means or contrivance whatsoever, the sending, conveyance or delivery, in this state, of any authorized communication, sporting, commercial or other news reports, by or through any telegraph or telephone line, cable or wire, under the control of any telegraph or telephone company doing business in this state, or who shall wilfully and maliciously aid, agree with, employ or conspire with, any other person or persons to do any of the aforemention unlawful acts, shall be deemed guilty of felony. . . .

The statute plainly was intended to prevent interception, by unauthorized connections, of information transmitted by telephone or telegraph wires. We find that the statute is inapplicable to the situation before us. The officer attached a suction cup listening device to his phone to record the conversation. He did not make any contact with the telephone wire, nor did he intercept a message intended for another person. Consequently, the officer did not violate the statute in recording this conversation with the appellant.

Appellant contends that *People v. Trieber*, 28 Cal.2d 657, 171 P.2d 1 (1946), mandates a different conclusion than we have reached above. *Trieber* was an appeal from the dismissal of an indictment under a statute similar to I.C. § 18–6705. In *Trieber* the defendant, with aid from a telephone company employee, obtained extensions from the telephones of two of his neighbors. Although these extensions were installed with the consent of his neighbors, he did not get authorization from the telephone company. The court found that phone company authorization was necessary, and the dismissal of the indictment was held to be error. Here appellant claims that the failure of the police to obtain phone company authorization for the recording made by the officer rendered the recording illegal. However, two important distinctions are present. First, the extensions in *Trieber* involved installation of equipment and connections with phone company wires in neighboring apartments. Second, the result in *Trieber* was the interception of messages intended for another person. In this case there was no connection with a telephone wire, but more importantly, there was no unauthorized interception of a message intended for another person.

Thus, even if we assumed that the statute in this case could be treated as a rule for exclusion of evidence, we hold that the trial court did not err in refusing to suppress the recording, because the statute was not in fact violated.

## II.

The appellant next contends that the trial court erred in allowing the recorded telephone conversation to be read to the jury after it had begun its deliberations. He argues that this action by the trial court gave undue emphasis to this portion of the evidence, thus minimizing other testimony and evidence presented to the jury.

In Idaho it has been held proper to allow a jury to return to the courtroom from its deliberations in order to rehear testimony. *State v. Jester*, 46 Idaho 561, 270 P. 417 (1928); *State v. Leavitt*, 44 Idaho 739, 260 P. 164 (1927). The court in these cases relied upon the predecessor to I.C. § 19–2204. This section provides that:

After the jury have retired for deliberation, if there is any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the cause, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney and the defendant or his counsel, or after they have been called.

The procedure required by this statute was followed.

Idaho Code § 19–2204 was adopted from California Penal Code § 1138. Therefore, cases interpreting California's § 1138 are helpful in determining the application of I.C. § 19–2204. In both *People v. Butler*, 47 Cal.App.3d 273, 120 Cal.Rptr. 647 (1975) and *People v. Litteral*, 79 Cal.App.3d 790, 145 Cal.Rptr. 186 (1978), the court reversed criminal convictions where the trial court refused to provide the jury with requested testimony. These cases hold that it is the right of the *jury* which is the primary concern of the statute.

The Colorado Supreme Court in *Settle v. People*, 180 Colo. 262, 504 P.2d 680 (1972) stated that:

> The overwhelming weight of authority in this country is that the reading of all or part of the testimony of one or more of the witnesses at trial, criminal or civil, at the specific request of the jury during their deliberations is discretionary with the trial court.

It is, of course, essential that evidence is not so selected, nor used in such a manner that there is a likelihood of it being given undue weight or emphasis by the jury. *Id.*

■ From these authorities, we hold that the rule in Idaho requires the trial court to attempt to meet any reasonable requests by the jury for the rereading of testimony. The trial court should exercise its discretion to ensure that a party to the litigation is not prejudiced. Appellant argues that he was prejudiced and he cites *State v. Ross*, 85 N.M. 176, 510 P.2d 109 (1973) in support of this contention. In *Ross* the court held that it was error to permit the jury to listen only to a taped conversation, where there was other oral testimony which conflicted with the oral testimony that had been recorded. *Id.* 510 P.2d at 111. That situation did not occur here. Appellant did not testify in this case. No conflicting evidence was introduced as to the recorded conversation. From the jury's request for a "transcript of the tape recording," the court could infer the jury had some disagreement concerning that evidence. The jury had a right to review this evidence. The trial judge properly directed his court reporter to read back the conversation to the jury from the reporter's notes. We hold no error was committed.

### III.

■ The appellant contends the trial court erred by denying his motion for a dismissal or mistrial based on the deputy prosecutor's conduct regarding the informant. We recognize such drastic action is required in some circumstances. It is required where the prosecutor's conduct, however well intended, results in a denial of a defendant's due process rights. In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963) the Court said: "The suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." The court in *United States v. Mele*, 462 F.2d 918 (2nd Cir. 1972) said:

> Even if the government had been motivated by the desire to protect [the informer], its deliberate suppression of evidence in preparation of false reports to mislead the defense cannot be accepted. The very least required of the government is a complete disclosure of the truth to the district court in camera so that the balance of interests could be struck by one not involved in the all too "often competitive enterprise" of prosecution.

462 F.2d at 926.

■ We note that the prosecutor's role is dual. A prosecutor should represent the

state's interest both in convicting criminals and in ensuring that every criminal defendant obtains a fair trial. *State v. Griffiths*, 101 Idaho 163, 166, 610 P.2d 522, 525 (1980); *State v. Wilbanks*, 95 Idaho 346, 353, 509 P.2d 331, 338 (1973). In *State v. Temple*, 5 Wash.App. 1, 485 P.2d 93 (1971) the court cites *Giles v. Maryland*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967) for the rule that:

> The primary duty of a lawyer engaged in public prosecution is not to convict but to see that justice is done. The suppression of facts or the secreting of witnesses capable of establishing innocence of an accused is highly reprehensible. (Citation omitted) At minimum, such a due process violation requires the granting of a new trial.

485 P.2d at 98. *See also Hanley v. Sheriff of Clark County*, 85 Nev. 615, 460 P.2d 162 (1969).

The alleged conduct of the deputy prosecutor in this case raises two concerns—that he interfered with access by appellant's counsel to a material witness, and that he may have chilled the testimony of that witness by placing the threat of prison time on the informant if he testified to anything that hurt the state's case. During a recess in appellant's trial the judge conducted an in camera hearing. The judge sought to find out whether the informant had any information helpful to the defense, and whether the informant was afraid to testify. In fact, a thorough examination of the informant by both the court and counsel occurred. The informant testified as to his part in "setting up" the appellant to make the first sale to the undercover officer. Any question as to his willingness to speak the truth in light of the deputy prosecutor's threats was obviated by his apparently candid testimony, with the deputy present, as to the details of those threats.

After this examination of the informant, the appellant elected to call the informant as a witness for the defense during the trial. In fact, appellant did not take the stand, and the informant was the only witness called by appellant to support the defense of entrapment. The jury had an opportunity to evaluate his testimony, consider the informant's position, and consider the attorney's conduct toward the witness. Instructions on entrapment were given, and appellant's counsel was able to argue to the jury that appellant had been "set up" by the undercover officer and by the informant pursuant to an agreement between them.

We can not lightly order the reversal of appellant's convictions and dismissal of the charges when the prejudice to him is speculative. In *United States v. Mele*, 462 F.2d 918 (2nd Cir. 1972), the court, in pondering what degree of prejudice must be shown to necessitate a new trial, said:

> The reason why the showing of prejudice required to bring down the balance [of the scales of justice] in favor of a new trial will vary from case to case is that the pans contain weights and counterweights other than interest in a perfect trial. Sometimes only a small showing of prejudice, or none, is demanded because that interest is reenforced by the necessity that "the administration of justice must not only be above reproach, it must also be beyond the suspicion of reproach," ... and by the teaching of experience that mere admonitions are insufficient to prevent repetitions of abuse. See *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

462 F.2d at 924 (quoting from *Kyle v. U. S.*, 297 F.2d 507, 514 (2nd Cir. 1961)).

In *State v. Martinez,* 103 Idaho 875, 643 P.2d 555 (Ct.App.1982), we discussed the case of *State v. Cory*, 62 Wash.2d 371, 382 P.2d 1019 (1963). In *Cory* the Washington Supreme Court set aside the conviction and dismissed charges against Cory after determining that a new trial would not provide him any adequate remedy for violation of his constitutional right to counsel. In *State v. Baker*, 78 Wash.2d 327, 474 P.2d 254 (1970), the court explained that the dismissal rule applied in *Cory* is only applicable when there has been prejudice that materially affects the right of the accused to a fair trial that cannot be remedied by holding a new trial.

We do not feel that such a situation has been portrayed in this case. The informant was available at trial, and appellant called him as a witness. The fact that the informant was willing to testify concerning alleged prosecutorial threats indicates he no longer felt restrained by those threats. In this case appellant has not shown prejudice by the deputy prosecutor's conduct. Accordingly, we hold that a new trial is not required.

Our decision that a new trial is unnecessary in this case does not alleviate our concern about the deputy prosecutor's conduct. Such conduct may have violated one or more sections of the Idaho Code of Professional Responsibility for lawyers. By this opinion, we hereby refer the matter to counsel of the Idaho State Bar for consideration of possible disciplinary proceedings. We are satisfied that appropriate action will be taken if professional misconduct is found, and that such action will be an effective deterrent to similar conduct on the part of others in the future.

### IV.

Appellant contends that the trial court erred in refusing to grant a mistrial or dismissal based on the prosecutor's failure to make adequate disclosure of: (1) a second taped telephone conversation, (2) the presence of an eye-witness to the first sale, and (3) the fact that the state was going to conduct a second, more conclusive, test on the substance alleged to be cocaine.

All three of the above items were made known to appellant just before trial or in testimony at trial. On appeal, the test we apply is whether the lateness of the disclosure so prejudiced appellant's preparation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial. *State v. Smoot*, 99 Idaho 855, 859, 590 P.2d 1001, 1005 (1978), quoting *United States v. Miller*, 529 F.2d 1125, 1128 (9th Cir. 1976); *State v. Wolf*, 102 Idaho 789, 640 P.2d 1190 (Ct.App.1982).

First, the "undisclosed" phone conversation was between the undercover officer and appellant. The appellant presumably was aware of its contents. The trial court suppressed the tape from being introduced into evidence. This eliminated any prejudicial effect of the late disclosure.

Second, testimony at trial disclosed that a woman had driven with the undercover officer to his first meeting with appellant. The woman apparently sat on the hood of a sports car, which was parked forty feet behind the car in which the appellant and the officer met during the first drug buy. When informed that this witness was present and was not disclosed to the appellant, the trial judge stated that defense counsel would be given the opportunity to find and interview the witness. There is no indication in the record as to whether defense counsel was able to find and interview the witness. Defense counsel made no motion for continuance in order to accomplish this objective.

Our Supreme Court has stated that the failure of a defendant to seek a continuance in order to interview witnesses whose identity is not released to the defendant prior to trial may foreclose a claim on appeal that prejudice resulted from the late disclosure. *State v. Smoot*, 99 Idaho 855, 859, 590 P.2d 1001, 1005 (1978); *State v. Crook*, 98 Idaho 383, 386, 565 P.2d 576, 579 (1977). We feel that same principle is applicable here. A denial of a motion for continuance under these circumstances would be error. However, the absence of a motion for continuance leaves us in the position of speculating as to the materiality of the witness's testimony, and whether the defense was able to contact and interview the witness.

Third, at appellant's preliminary hearing, about ten months before trial, his counsel learned that an analysis of the substances purchased by the undercover officer from appellant showed them to contain cocaine. Appellant's counsel was also aware prior to trial that these initial tests, conducted by a chemist at a state forensic laboratory, were not conclusive. What counsel did not know, until the first day of trial, was that the chemist performed another more conclusive test the day before trial. These tests also showed the substances to contain cocaine. Appellant ob-

jected to the admission of the results of the subsequent tests on the grounds that the state did not make a timely disclosure of this information and of the fact that these additional tests were going to be conducted. The results of the latest tests were provided to the appellant's counsel about the same time as they were delivered to the prosecutor. The same chemist conducted both series of tests. The subsequent tests merely confirmed the results of the earlier tests. While it is obvious that some doubt inherent in the results of the earlier tests was dispelled, and the state's case was made stronger by the evidence of the subsequent test results, appellant has not shown that he was prejudiced by the admission of such evidence. We hold that admission of this evidence was not error.

## V.

Finally, the appellant asserts that the evidence produced at trial was not sufficient to support the jury's verdict of guilty on each of the two counts. We have carefully reviewed that evidence and we hold that it was sufficient. The judgment of conviction is affirmed as to both counts.

WALTERS, C. J., and BURNETT, J., concur.