# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 40544

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2014 Opinion No. 21** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: March 25, 2014** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| ROBERT JAVIER GARCIA, JR., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Blaine County. Hon. Robert J. Elgee, District Judge.

Judgment of conviction <u>vacated</u> and case <u>remanded</u>.

Sara B. Thomas, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Robert Javier Garcia, Jr. appeals from his conviction for aiding and abetting delivery of methamphetamine. Garcia contends that the evidence was insufficient to convict and that the district court erred by granting the jury's request to have a portion of an informant's testimony read back to them after deliberations had begun. We affirm the sufficiency of the evidence, but vacate the conviction on the latter claim of error.

## I.

## BACKGROUND

In June or July of 2010, an individual was arrested for felony possession of methamphetamine. In exchange for reduction of the charge to an unspecified misdemeanor, he agreed to cooperate with law enforcement in pursuit of drug distributors. In August 2010, this individual (hereinafter "informant"), at the behest of a Blaine County detective, telephoned

1

Ricardo Vargas-Hurtado and arranged to buy one-eighth of an ounce of methamphetamine. The transaction was set to take place on August 25, 2010, at a Hailey, Idaho apartment building.

Before the appointed time for the meeting, the police outfitted the informant with an audio recording device and gave him $350 in marked bills, and four officers set up surveillance. As a result of the transaction that followed, Garcia was charged with aiding and abetting delivery of methamphetamine, Idaho Code §§ 37-2732(a)(1)(A), 18-204. The State alleged that Garcia delivered the methamphetamine to Jose Hurtado-Delatorre who in turn delivered it to the informant.

At Garcia's trial, the informant described events that occurred following his arrival to pick up the drugs at the arranged meeting with Vargas-Hurtado. The informant said that when he arrived, Vargas-Hurtado and Hurtado-Delatorre were outside on the front lawn. Hurtado-Delatorre made a phone call and told the informant that the methamphetamine would be there in about an hour. A short time later, defendant Garcia drove up in a white Mercedes SUV. The informant knew Garcia from previous encounters, but their conversation at the scene was limited to saying hello. Garcia and Hurtado-Delatorre spoke, but the informant was not privy to their conversation. After Garcia left, Hurtado-Delatorre told the informant that it would be about another half hour before the methamphetamine arrived. The informant gave Hurtado-Delatorre the buy money. Awhile later, Garcia again drove up. Hurtado-Delatorre went to Garcia's vehicle and spoke to him, but again the informant was not privy to their conversation. After Garcia left, Hurtado-Delatorre delivered the methamphetamine to the informant.

Following submission of the case to the jury, the jury asked that the informant's testimony on the State's direct examination be read back to them. The defense objected to the reading of only the informant's direct testimony, contending that the cross-examination should also be read because "a lot of the answers of the confidential informant changed or were significantly clarified by the cross-examination." The district court overruled the defense objection, stating that it would not tell the jury what it wanted to rehear. The direct examination was then read in open court. The reading stopped about halfway through the direct examination when the jury informed the court that it had heard enough. The jury thereafter returned a verdict of guilty.

Following the verdict, Garcia renewed an earlier request for an Idaho Criminal Rule 29 judgment of acquittal on the ground that the evidence was insufficient to prove his guilt. The

2

district court denied the motion. Garcia appeals, contending that the court erred in denying his motion for acquittal and in allowing a read-back of part of the informant's direct testimony without including the cross-examination.

## II.

## ANALYSIS

### A.     Denial of I.C.R. 29 Motion for Judgment of Acquittal

Garcia first contends that because the evidence was insufficient to convict, the district court erred in denying his Idaho Criminal Rule 29 post-verdict motion for a judgment of acquittal. That rule mandates that a trial court enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." I.C.R. 29(a). In ruling on Garcia's motion, the district court expressed its view that "this is a very, very, very, close case" and that a finding of guilt or innocence "turns on a razor's edge." But, the court reasoned, "The jury [felt] there was proof beyond a reasonable doubt" and "in view of the jury's finding, I'm not willing to grant a motion for judgment of acquittal."

Garcia first argues that the district court erred by deferring to the jury's verdict, thereby abdicating its duty to independently evaluate the evidence for sufficiency. If that is what occurred, then Garcia would be correct that it was error. If deference to the jury verdict resolved the matter, there would be no reason for the I.C.R. 29(c) authorization for post-verdict motions for a judgment of acquittal. However, whether the district court erred in this respect is not dispositive because on appeal this Court conducts a de novo review of the denial of a motion for a judgment of acquittal. We independently consider the evidence to determine whether a reasonable mind could conclude that the defendant's guilt as to each material element of the offense was proven beyond a reasonable doubt. *State v. Dietrich*, 135 Idaho 870, 873, 26 P.3d 53, 56 (Ct. App. 2001); *State v. Kopsa*, 126 Idaho 512, 521, 887 P.2d 57, 66 (Ct. App. 1994); *State v. Printz*, 115 Idaho 566, 567, 768 P.2d 829, 830 (Ct. App. 1989). In assessing the sufficiency of evidence, we will uphold a judgment of conviction entered upon a jury verdict so long as there is substantial evidence upon which a rational trier of fact could conclude that the prosecution proved all essential elements of the crime beyond a reasonable doubt. *State v. Severson*, 147 Idaho 694, 712, 215 P.3d 414, 432 (2009). Evidence is substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. *Id.*; *State v. Tankovich*, 155 Idaho 221, 228, 307 P.3d 1247, 1254 (Ct. App. 2013).

3

On appeal, this Court must view the evidence in the light most favorable to the prosecution. *State v. Sheahan*, 139 Idaho 267, 286, 77 P.3d 956, 975 (2003). In assessing the sufficiency of evidence, we will not substitute our own judgment for that of the jury on matters such as the credibility of witnesses, the weight to be given to certain evidence, and the reasonable inferences to be drawn from the evidence. *Severson*, 147 Idaho at 712, 215 P.3d at 432.

Garcia asserts that the trial evidence did not sufficiently show that he is the person who delivered methamphetamine to Hurtado-Delatorre. Garcia notes there was testimony showing that a number of people arrived and left during the time that the informant was present at the scene and that Hurtado-Delatorre left the scene in his car at one time and then returned. Garcia argues Hurtado-Delatorre could have obtained the drugs from any of the other people or when he left the scene or even, given the relatively small amount of the substance, from his pocket. The defense further notes, correctly, that this case was tried almost exclusively on the testimony of the informant, that the informant did not testify to any incriminating statements by Garcia, and that the informant admitted that he was not in a position to directly observe any exchange of money or drugs between Garcia and Hurtado-Delatorre. The defense further emphasizes that no buy money was ever recovered from Garcia and there was no evidence, independent of the informant's testimony, tending to show that Garcia delivered the drugs.

Sufficiency of the evidence, however, is determined from the evidence that *was* presented, not solely from the evidence that was absent. Applying our standards of review, we conclude that there was substantial circumstantial evidence upon which a rational trier of fact could find, beyond a reasonable doubt, that Garcia delivered the drugs to Hurtado-Delatorre. The evidence showed that after Hurtado-Delatorre made a phone call and told the informant that the methamphetamine would be there in about an hour, Garcia arrived. He and Hurtado-Delatorre spoke. Soon after Garcia left, Hurtado-Delatorre told the informant that it would be about another half hour before the methamphetamine arrived. From this one can reasonably infer the Hurtado-Delatorre learned from Garcia that the delivery of the methamphetamine would be delayed. A short while later, Garcia again drove up and Hurtado-Delatorre went up to the defendant's vehicle and spoke to him. Immediately after Garcia again left, Hurtado-Delatorre gave drugs to the informant, again raising a very logical inference that Garcia was the source of the drugs and had just delivered them to Hurtado-Delatorre. Garcia's theory that Hurtado-Delatorre could have acquired the drugs from someone else or while he was away from the scene

4

is countered by the actions that Hurtado-Delatorre took on two occasions promptly after meeting with Garcia.

Although the evidence cannot be characterized as overwhelming, it is sufficient to rationally support a finding of Garcia's guilt. The relative weakness of the State's case, however, informs our decision on the next issue.

## B. Reading Back Testimony to the Jury

After beginning its deliberations, the jury informed the court that it wished to again hear the informant's testimony on direct examination. The defense objected to a reading of only the witness's direct examination, contending that the cross-examination of the informant should also be read back because it had significantly discredited the witness's direct examination. The district court overruled the objection, concluding that it was up to the jury to determine what it wanted to rehear. The court stated:

> [I]n my view, the jury can come in and say we want you to find a specific question and a specific answer and read that to us. And that's what they want. And I think it's the Court's obligation under the statute to give them what they want, not what I think they want or we want to give them. So I'm only going to give them what they want.

The direct examination was then read to the jury. It ceased halfway through that examination when the jury informed the court that it had heard what it needed.

Garcia contends that the district court erred in two ways. First, he argues that it was error for the court to allow reading of the portion of the informant's direct testimony containing inadmissible hearsay that had, on defense objection, been struck from the record.[1] Second, he

---

[1] That testimony occurred as follows:

> Q. Did you receive any meth at that time while Robert was there the first time?
> A. No, I did not.
> Q. And did you know why?
> A. Jose Hurtado told me that he would go get it from his house.
> Q. Do you know who he--who is "he"?
> A. Robert.
> [DEFENSE COUNSEL]: Objection, Your Honor. What Jose Hurtado says is complete hearsay.
> THE COURT: I'll sustain it.
> . . . .

5

asserts, as he did below, that the district court abused its discretion by not including the cross-examination of the informant in the testimony that was read back. He argues that this action by the trial court gave undue emphasis to the State's inculpatory evidence while minimizing his cross-examination that significantly undercut the persuasiveness of the State's evidence.

### 1.     Reading back stricken testimony

With respect to the first issue, Garcia contends that the stricken testimony was inadmissible and highly prejudicial in the first instance, and that repeating it a second time to the jury only served to heighten the prejudicial effect. This claim of error we do not consider, however, for it was not preserved by objection below. Although the defense objected to the hearsay testimony during the witness's examination and obtained a court order striking it from the record, the defense did not object when the same questions and answers were read back to the jury, together with the order striking the testimony. No doubt, the reading of the stricken testimony could have been prevented by a timely objection when the read-back occurred. Claims of error that were not preserved by objection below will not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992); *Person v. State*, 147 Idaho 453, 455, 210 P.3d 561, 563 (Ct. App. 2009).

Garcia asserts, however, that this error may be addressed for the first time on appeal because it amounts to fundamental error. Idaho appellate courts may consider a claim of error to which no objection was made in the trial court if the issue presented rises to the level of fundamental error. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v.*

---

THE COURT: So the jury is instructed to disregard the answer to that question of the statement as to what Jose told him.
. . . .
Q.     All right. And do you remember why you gave [the buy money] to [Jose Hurtado] at that time?
A.     I recall because he was going to give it to Robert Garcia for the meth.
Q.     Okay.
[DEFENSE COUNSEL]: Objection, Your Honor. That's not based on personal knowledge.
THE COURT: I'll sustain an objection to the "he was going to give it Robert." He's testifying to what someone else was going to do, so I'll sustain it, and you're instructed to disregard the statement as to what someone else was going to do.

*Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971); *State v. Hansen*, 154 Idaho 882, 886-87, 303 P.3d 241, 245-46 (Ct. App. 2013). A fundamental error is one that (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010).

Garcia contends that the re-reading of stricken testimony violated his due process right to a fair trial and that the first prong of *Perry* is thus satisfied here. We disagree. The substance of the claimed error is that the jury should not have been exposed a second time to testimony that was hearsay and therefore inadmissible under Idaho Rule of Evidence 802. Where the asserted error relates not to infringement upon a constitutional right, but to violation of a rule or statute, the fundamental error doctrine is not implicated. *State v. Jackson*, 151 Idaho 376, 256 P.3d 784 (Ct. App. 2011). "To hold that the presentation of evidence and associated argument in violation of an evidentiary rule satisfies the constitutional violation element of *Perry* because all evidentiary error implicates due process would, in our view, virtually eviscerate the first prong of the *Perry* standard and contravene the limits that *Perry* places on fundamental error review." *Id.* at 379-80, 256 P.3d at 787-88. *See also State v. Norton*, 151 Idaho 176, 184-87, 254 P.3d 77, 85-88 (Ct. App. 2011). Here, Garcia's initial hearsay objections to the testimony were sustained. When the stricken testimony was later read back and the jury heard the same information, in violation of the same evidence rule, a second time, it remained only a violation of a rule of evidence. Thus, while allowing the stricken testimony to be read back was undoubtedly error, it was not an error of constitutional dimension reviewable as fundamental error.

### 2. Excluding cross-examination

Garcia did challenge, by timely objection, the district court's decision to permit the jury to hear again a portion of the informant's testimony without including the cross-examination.

The district court based its decision to allow the read-back upon Idaho Code § 19-2204, which provides:

> After the jury have retired for deliberation, if there is any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the cause, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney and the defendant or his counsel, or after they have been called.

Our Supreme Court has held that reading back only a portion of a witness's testimony at the request of the jury, as authorized by the statute, is not error per se. *State v. Jester*, 46 Idaho 561, 573, 270 P. 417, 421 (1928); *State v. Leavitt*, 44 Idaho 739, 746-47, 260 P. 164, 166 (1927). In *State v. Couch*, 103 Idaho 205, 646 P.2d 447 (Ct. App. 1982), however, this Court addressed concerns involved in reading back testimony to the jury. We observed that the weight of authority in this country holds that reading of all or part of the testimony of one or more of the witnesses at the request of the jury is discretionary with the trial court, but we further said, "It is, of course, essential that evidence is not so selected, nor used in such a manner that there is a likelihood of it being given undue weight or emphasis by the jury." *Id.* at 208, 646 P.2d at 450. We held that the trial court must attempt to meet any reasonable requests by the jury for the re-reading of testimony, but that the court also should exercise its discretion to ensure that a party to the litigation is not prejudiced. *Id.* As an example of a prejudicial practice, we referred to *State v. Ross*, 510 P.2d 109, 111 (N.M. Ct. App. 1973), where the New Mexico Supreme Court held that the defendant was prejudiced when the trial court permitted the jury to listen again to only a taped conversation even though there was also oral testimony that favored the defendant and conflicted with the statements that had been recorded. *Id.*

The New Jersey Supreme Court recently provided the following guidelines to inform trial courts' exercise of discretion in addressing a jury's request for a playback of videotaped testimony:

> (1) As noted before, judges should ordinarily grant a jury's request to play back testimony. . . .
> (2) As a general rule, after redacting sidebars and inadmissible testimony to which counsel objected, the entire testimony requested should be played back--including direct and cross examination--so that evidence may be considered in its proper context. Only then can a jury hear both direct proofs as well as inconsistencies and impeachment material. Trial judges nonetheless retain discretionary authority to try to narrow a jury's request if it calls for the playback of extensive testimony.
> (3) Courts should honor a jury's specific request to hear only limited parts of a witness' testimony--provided, once again, that playback includes relevant direct and cross examination. Jurors should not be required to watch or hear more testimony than they ask for. If necessary, the trial judge can clarify what testimony the jury wants repeated.
> (4) Playbacks, like read-backs, should take place in open court with all parties present. That practice avoids the selective replaying of only a portion of testimony.

8

(5) Judges should take precautions to prevent juries from placing undue emphasis on the particular testimony that is replayed. To that end, at the time the testimony is repeated, judges should instruct jurors to consider all of the evidence presented and not give undue weight to the testimony played back.

(6) Judges should make a precise record of what was played back to the jury.

*State v. Miller*, 13 A.3d 873, 880-81 (N.J. 2011) (citations omitted).

The Ninth Circuit Court of Appeals has adopted a general rule that where a court allows a witness's testimony to be read back, in order to avoid prejudice to a party by emphasizing only certain parts of the testimony, the entire examination of the witness should be read. *United States v. Newhoff*, 627 F.3d 1163, 1167-69 (9th Cir. 2010); *United States v. Richard*, 504 F.3d 1109, 1113-17 (9th Cir. 2007).

We do not adopt a broad rule that any read-back of testimony must include all of that witness's testimony. We do, however, find error here in the denial of Garcia's specific request that the cross-examination be included. First, the district court appears not to have recognized that it had the discretion to require reading of more testimony than the jury specifically requested. The court instead concluded that the parameters of what would be read were entirely up to the jury. Thus, the district court did not recognize the scope of its discretion.[2] Second, Garcia was prejudiced by the selective read-back. The jury heard a second time only the State's examination of the informant. It did not rehear the defense's cross-examination where it emphasized that the informant's testimony was provided in exchange for favorable treatment in a felony criminal case, thus challenging the informant's credibility. The jury also did not rehear, among other favorable defense testimony, that a number of other men who could have provided the methamphetamine to Hurtado-Delatorre were present at the scene, that Hurtado-Delatorre had left the scene in his car for a time and then returned, that defendant Garcia was not present when the informant gave Hurtado-Delatorre the buy money, and that the informant did not see any exchange of the drugs or money between Garcia and Hurtado-Delatorre. We conclude that,

---

[2]    Although the court appropriately attempted to honor the jury's request and not steer the jury to particular testimony, in some circumstances the court should consider the need to ensure that the testimony to be re-read is not given undue weight. For instance, if the testimony to be re-read was later unequivocally recanted, the court must consider that fact in exercising its discretion. While this case is not that striking, the court should have considered the need to ensure the testimony to be re-read was not subsequently withdrawn, modified, or taken out of context.

under these circumstances, reading of only a portion of the witness's testimony was prejudicial in this case. In the absence of re-reading the cross-examination, the testimony favoring the State was overemphasized.

Because this error was preserved for appeal by defense objection, the State bears the burden of establishing that the error was harmless. *State v. Perry*, 150 Idaho 209, 222, 245 P.3d 961, 974 (2010). As stated in the preceding section, the State's case was predicated almost exclusively upon the informant's testimony. The defendant's cross-examination of the informant both gave reason to question the informant's credibility and demonstrated that there were possible sources, other than Garcia, of the drugs that were ultimately delivered to the informant. We conclude that the error was not harmless and therefore vacate the conviction.

## III.
## CONCLUSION

The trial evidence was sufficient to support the jury's verdict. The judgment of conviction is vacated, however, because of court error in reading back to the jury only a portion of the primary witness's testimony. The case is remanded for further proceedings consistent with this opinion.

Judge GRATTON and Judge MELANSON **CONCUR.**