First degree robbery; life imprisonment.
Eyewitness accounts conclusively demonstrated that appellant was one of three black males who entered Mason Jewelers in Huntsville, Alabama, on the afternoon of August 20, 1981, and, at gunpoint, forced employees there to give them "roughly about seven hundred dollars" from the cash register and a substantial amount of jewelry worth approximately $110,000. Appellant and one accomplice were apprehended very shortly after the robbery by police officers arriving on the scene in response to a silent alarm. At the time of his arrest, appellant had $633 in his pocket.
 I
Appellant contends that the eyewitnesses' out-of-court and in-court identifications were impermissibly suggestive and prejudicial and should have been excluded.
Two employees from Mason Jewelers testified that they were present in the store when the robbery occurred. Everett Ramsey, the store manager, testified that he observed appellant the entire ten or fifteen minutes he was in the store. Appellant pointed a pistol at Ramsey and ordered Ramsey to give him the money from the cash register, to open the vault, which was empty, and to empty several trays of diamond rings into a pillow case he was holding. Ramsey made a positive in-court identification of appellant, noting that appellant had worn a ball cap and "some kind of makeup" on the day of the robbery. He stated that there was "no question at all" in his mind that appellant was one of the robbers.
Ramsey testified that police detectives came to the store approximately two weeks after the robbery and showed the employees some photographs of black males. He thought there were around ten photographs in the group. He stated that he was able to positively identify appellant's picture as that of one of the three men who robbed him. Ramsey further testified that the detectives did not tell him anything about the people in the photographs prior to his identification of appellant.
During cross-examination, defense counsel introduced a picture appearing on the front page of the Huntsville news after the trial of appellant's accomplice, Aaron Jackson. Both appellant and Jackson appeared in the picture and were identified by name in the caption. Ramsey testified that this picture did not influence his identification of appellant because "that was one of the *Page 676 
scariest points of my life and I can still see that man's eyes, his eyes, holding that gun on me."
Steve Seat also made a positive in-court identification of appellant as one of the robbers. He stated that he observed appellant some two or three minutes before the robbery actually began. He explained that he was watching appellant during this time because he and Ramsey had been suspicious of appellant and his companion when they entered the store. Seat described the clothing appellant was wearing on the day of the robbery and stated that appellant had appeared to have black mascara smeared on his face. He further stated that there was no question in his mind that appellant was one of the three robbers.
On cross-examination, Seat testified that he picked appellant's picture out of a group of photographs shown to him by detectives "a couple of days" after the robbery. He stated that there were five or six photographs in this group. There was no suggestion by the detectives as to which picture he should choose. Seat testified that he did not see the newspaper picture until the day of trial and did not then read the caption.
Detective Perry Petty testified that he and Investigator Turner went to Mason Jewelers the day after the robbery and showed photographs to all the employees. He stated that they made no suggestion to any employee as to which photograph they should choose.
When a pre-indictment photographic array is used, the primary concern is the potential for misidentification. Simmons v.United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247
(1968). Each case is to be considered on its own facts in determining whether the "photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."Simmons v. United States, supra. On the facts involved in this case, we hold that the identification procedure was neither unnecessarily suggestive nor conducive to a mistaken identification. Both eyewitnesses testified that they were in no way influenced in making their decision. Further, neither was exposed to a one-photograph display. See Manson v.Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
Moreover, as this court stated in Flowers v. State,402 So.2d 1088 (Ala.Cr.App.), cert. denied, 402 So.2d 1094 (Ala. 1981):
 "Even had the confrontation procedures been suggestive, which we hold they were not, reliability remains the linchpin in determining the admissibility of identification testimony. The United States Supreme Court has set out the following five factors to be considered in determining reliability: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation." [Citations omitted]
Based on these five criteria, we conclude that the identifications by Ramsey and Seat were reliable. Our opinion is not changed by the fact that appellant's picture appeared in the Huntsville news. Ramsey testified that the newspaper picture had no influence in his identification of appellant. Further, it does not appear that the picture had any influence on Seat's identification of appellant.
 II
Prior to the presentation of any testimony, the trial court entertained appellant's motion to suppress the identification testimony. The trial judge denied the motion, but stated:
 "[P]rior to the actual pointing out of any person pursuant to questions I will permit cross-examination or voir dire examination on the points that you have raised to see if the identification process should be permitted to go with each individual witness. . . ." [Emphasis added]
Appellant later objected "based upon our prior motion" to both eyewitnesses' in-court identification. He did not, however, request *Page 677 
to take the witnesses on voir dire or a hearing outside the presence of the jury. He now complains that he was denied an opportunity to test the reliability of the identification procedures.
Determining the reliability of an identification is similar in nature to determining the voluntariness of a confession. In regard to the voluntariness of a confession, we have held that "the burden is not on the trial court to withdraw the jury ex mero motu, hear evidence . . . outside the jury's presence, and expressly rule." Harris v. State, 406 So.2d 1074 (Ala.Cr.App. 1981); Carroll v. State, 370 So.2d 749 (Ala.Cr.App.), cert. denied, 370 So.2d 761 (Ala. 1979). It follows that the trial court is under no duty to ex mero motu conduct a hearing outside the presence of the jury in determining the reliability of an identification. Even though the trial judge in this case stated that he would permit cross-examination or voir dire examination of the witnesses prior to an in-court identification, he was under no burden to do so in the absence of a request by the appellant.
 III
Subsequent to his arrest, appellant gave a tape recorded confession to Huntsville police officers. This confession was admitted into evidence and played for the jury. (The admissibility of the confession is not an issue on appeal.) After beginning their deliberation, the jury requested to hear the confession again. The trial court granted the request. Appellant asserts that this was reversible error because it was highly prejudicial and placed undue importance on the confession.
It is well-established that the rereading of testimony to the jury at its request is within the sound discretion of the trial judge. Martin v. State, 371 So.2d 460 (Ala.Cr.App. 1979);Cooper v. State, 340 So.2d 91 (Ala.Cr.App. 1976). Before replaying appellant's confession, the trial court instructed the jurors as follows:
 "I caution you do not because we give you this portion of the testimony, do not take it to the exclusion of all other testimony but you must, indeed, consider it in conjunction with all of the other evidence that you have been given and not permit it to be highlighted purely because of your request that we play it for you and repeat it. So, you must take pains to take it in conjunction with all else that has been given you from both sides of the case."
Clearly, the trial judge took all possible precautions to ensure that no undue importance would be placed in the confession. We find no abuse of discretion in this case.
For the reasons stated above, the judgment of the Madison Circuit Court is hereby affirmed.
AFFIRMED.
All the Judges concur.