Alex McKINNEY *v.* STATE of Arkansas

CR 90-95

797 S.W.2d 415

Supreme Court of Arkansas
Opinion delivered October 1, 1990

*Bracey & Bracey*, by: *Bill E. Bracey, Jr.*, for appellant.

*Steve Clark*, Att'y Gen., by: *Ann Purvis*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Alex McKinney, was convicted of murder in the first degree for the shooting death of his girl friend, Lora Chapman, and sentenced to 40 years imprisonment.

On appeal, McKinney argues that: 1) the trial court erred in granting the jury's request, during deliberation, to rehear the court reporter's audio tape of a prosecution witness; and 2) the verdict was not supported by sufficient evidence. We disagree and affirm.

Since McKinney's second contention is that the evidence was insufficient to sustain the verdict, we will consider it first.

## SUFFICIENCY OF THE EVIDENCE

On the morning of March 26, 1989, McKinney and Lora Chapman, who resided together with their three-year-old daughter, began arguing. Testimony at trial revealed that the couple came in and out of the house and argued in and around the cars parked in the carport and yard. During their arguments, Lora Chapman was shot.

Witnesses who heard the gunfire all claim to have heard at least two shots. One neighbor claimed she heard three "popping" noises. McKinney's next door neighbor, James Moore, testified

that when he first heard the arguing from his window, he observed Lora Chapman sitting inside a white Cadillac parked in their carport and McKinney standing by the driver's side. The couple returned inside with McKinney holding a gun and following behind Ms. Chapman. Moore later witnessed the couple walking around the other car, a brown Citation, with McKinney still in possession of the revolver. At that time he called the police. Moore subsequently heard two shots but did not witness the shooting.

Lora Chapman's aunt, Jeana Henton, was inside the couple's house and was awakened by their talking. She heard them go in and out of the house several times and observed them arguing in the carport from the living room window. Henton later heard a gunshot, returned to the window, and witnessed McKinney shoot Lora Chapman. "I saw her run around to the driver's side and as soon as she got there, he shot."

McKinney, testifying in his own defense, claimed the shooting was an accident. He stated initially that Ms. Chapman had procured a gun from the Cadillac and that he had taken it from her. Later, during a chase around the Citation, in which he was attempting to retrieve the car keys from Ms. Chapman, the gun accidentally discharged.

According to Dr. Fahmy Malak, state medical examiner, the bullet entered the upper lip and traveled downward, and from left to right, and lodged above the right collar bone. It was Dr. Malak's opinion that the bullet was fired from a distance of four to five feet.

Further testimony from Berwin Moore, a firearm's expert with the state crime lab, established that in testing the revolver, he was unable to get the gun to discharge accidentally.

At the close of the state's case, and at the conclusion of the trial, McKinney moved for a directed verdict on the basis that there was insufficient evidence in which the jury could find McKinney guilty of first degree murder. Both motions were denied. In determining whether there is substantial evidence to support the verdict, we review the evidence in the light most favorable to the appellee and consider only the testimony which tends to support the guilty verdict. *Williams* v. *State*, 289 Ark.

69, 709 S.W.2d 80 (1986). Substantial evidence has been defined as evidence which is of sufficient force that will compel a conclusion one way or another. The evidence must be beyond mere suspicion or conjecture. *See Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988); *Holloway* v. *State*, 293 Ark. 438, 738 S.W.2d 796 (1987).

Based on the testimony at trial, we conclude that there was substantial evidence to support the jury's verdict of murder in the first degree. Witnesses heard at least two shots and observed the couple outside arguing. McKinney was seen holding a revolver, and Jeana Henton claims to have seen him intentionally shoot Lora Chapman. McKinney argues that Henton's testimony is suspect because of her relationship to the victim and the fact that she was not wearing her glasses at the time of the incident. We have long held, however, that credibility of witnesses is for the jury to determine. *Stewart* v. *State*, 297 Ark. 429, 762 S.W.2d 794 (1989).

McKinney further contends that the jury relied on circumstantial evidence for their finding of premeditation and deliberation, and that no motive had been established. First, the law assigns equal weight to direct and circumstantial evidence in determining whether there is substantial evidence to support the jury's verdict. *Smith* v. *State*, 300 Ark. 330, 778 S.W.2d 947 (1989). Furthermore, Henton's testimony that she saw McKinney shoot the victim is not circumstantial, but rather direct evidence of McKinney's state of mind. It is well established that premeditation and deliberation need not exist for any length of time and can be formed on the spur of the moment. *See Ford* v. *State*, 297 Ark. 77, 759 S.W.2d 556 (1988); *Davis* v. *State*, 257 Ark. 771, 475 S.W.2d 155 (1972). Evidence of motive, existing before the commission of the crime, may be relevant to the defendant's mental state, but is not required. The sudden, yet deliberate, action of McKinney revealed through Jeana Henton's testimony, in addition to other evidence established at trial such as the firing of two shots, was enough to warrant the jury's finding of first degree murder.

## REHEARING OF TESTIMONY

McKinney argues that the trial court erred in allowing the jury to rehear certain testimony during its deliberation. The

record reveals that, during their deliberation, the jury members returned to open court whereupon the foreperson related that "the jury had a question about Mr. Moore's testimony, about the time and time frame, in any way that we can." The trial judge responded that the jury could request to hear any portion of the testimony over again; the foreperson then requested they be allowed to do so. Thereafter, Moore's testimony, recorded on audio tape, was played to the jury. McKinney objected, claiming that it was prejudicial error to allow the jury to single out certain testimony, thereby lending undue emphasis and credit to one witness.

On appeal, McKinney supports his objection to the playing of the recorded testimony by contending that the trial court violated a provision of Ark. Code Ann. § 16-89-125(e) (1987), thus denying him due process.

We note that this exact contention was not raised at trial and ordinarily we do not consider different grounds for objection on appeal. *See Harris* v. *State*, 295 Ark. 456, 748 S.W.2d 666 (1988). However, because McKinney's objection at trial was, in substance, a due process objection and touched on the circumstances under which a trial judge can provide the jury with additional information during deliberation, as governed by the foregoing statute, we find his argument to be sufficiently before us on appeal.

Section 16-89-125(e) states:

> After the jury retires for deliberation, if there is a *disagreement* between them as to any part of the evidence, or if they desire to be informed on a point of law, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the counsel of the parties. (Emphasis ours.)

McKinney argues that this section establishes a prerequisite that there must be a showing to the trial court that a disagreement exists between them before the jury can receive the requested information and that the trial court erred as no such "disagreement" was shown, rather only an assertion that they had a "question."

McKinney cites *Tarry* v. *State*, 289 Ark. 193, 710 S.W.2d 202 (1986) and *Williams* v. *State*, 264 Ark. 77, 568 S.W.2d 30 (1978) for our holding that the provisions of the statute are mandatory and should be strictly construed. *Tarry* and *Williams* are easily distinguishable from the present case. In *Tarry*, we found prejudice to the defendant because the judge entered the jury room and entertained questions from the foreman. *Williams* involved a situation where the jury asked the bailiff, at the door to the jury room, whether "it would matter" if one of the jurors was acquainted with the state's witness. Our concern in both cases was that the jury's inquiries were not made in open court in the presence of each other and in the presence of counsel. It was this concern, that the procedural requirements of section 16-89-125(e) be followed, that prompted our admonition of strict compliance with the statute.

On several other occasions we have made mention that section 16-89-125(e) is mandatory. However every one of these cases, without exception, involved communications between the court and less than the full jury, or communications made either out of open court or outside the presence of counsel. *See generally, Rhodes* v. *State*, 290 Ark. 60, 716 S.W.2d 758 (1986); *Golf* v. *State*, 261 Ark. 885, 552 S.W.2d 236 (1977); *Martin* v. *State*, 254 Ark. 1065, 497 S.W.2d 268 (1973); *Andrews* v. *State*, 251 Ark. 279, 472 S.W.2d 86 (1971); *Rollie* v. *State*, 236 Ark. 863, 370 S.W.2d 188 (1963); and *Aydelotte* v. *State*, 177 Ark. 595 (1926). From this history, it is apparent that our requirement that the statute be strictly followed focuses not on the express reason for the jury to request the information, but the procedure by which the request is presented. This concern is evident from our holding in *Rollie, supra,* in which we said:

> This statute requires in unambiguous language that the entire jury and no less a number thereof must be present before the court and counsel for the parties, or notice given to counsel, upon any proceedings affecting the rights of the defendant or the state as defined in this statute. Its provisions are mandatory.

Although one jurisdiction, under a comparable statute, appears to require a finding of "jury disagreement" as a prerequisite to the rehearing of testimony, we do not share its view. *See*

*Jones* v. *State*, 706 S.W.2d 664 (Tex. Cr. App. 1986). Other states, with statutes identical to ours, have adopted a more sensible approach. In *Tabor* v. *State*, 582 P.2d 1323 (Okla. Crim. App. 1978), the jury foreman advised the court that there was uncertainty as to the exact wording of one of the witness's testimony and requested that it be read to them. Defense counsel objected that there was no "disagreement" between the jury members. In concluding that the jury's uncertainty amounted to "disagreement" under their statute, the court quoted from *Jones* v. *State*, 456 P.2d 610, 612 (Okla. Crim. App. 1969):

> We interpret the mandatory aspect of 22 O.S.A. § 894 to be that which provides for the return of the jury to the courtroom, and for the notification of the parties to the trial that the jury is being returned for additional information or instructions. The determination of whether or not the jury's request is required lies within the judicial discretion of the trial judge.

Similarily, in *People* v. *Butler*, 47 Cal. App. 3d, 273, 120 Cal. Rptr. 647 (1975), the California Court of Appeals rejected the state's "mechanical" argument that the statute was not followed because the jury foreman's statement "we couldn't really hear [the testimony] correctly" did not indicate any "disagreement". "The argument of the attorney general ignores a respected line of authority which holds that upon request by the jury for the re-reading of testimony, such assistance must be given." The court later added:

> Although the mandate of penal code § 1138 is an important protection for a party, it is the right of the jury which is the primary concern of the statute; its provisions do not delegate to the trial judge, the parties, or their attorneys, the right to determine the jury's wishes.

These cases, although conceding that the procedural provisions of the statute are mandatory, nonetheless vest discretion in the trial judge as to whether to grant the jury's request and, if so, to what extent. The trial court's discretion in this matter is recognized by a number of jurisdictions that are governed by statutes similar to ours, as well as those without such statutes. *See State* v. *Nowakowski*, 188 Conn. 620, 452 A.2d 938 (1982); *State* v. *Couch*, 103 Idaho 205, 646 P.2d 447 (1982); *People* v.

*Cyr*, 113 Mich. App. 213, 317 N.W.2d 857 (1982); and *Givens* v. *State*, 705 P.2d 1139 (Okla. Crim. App. 1985).

It is our view that this discretion should extend to a determination of whether or not the jury has expressed sufficient disagreement or confusion over some aspect of the testimony, thereby warranting a repeat of some portion of it.

This same view was espoused by the Idaho Court of Appeals, which stated: "We hold that the rule in Idaho requires the trial court to attempt to meet any reasonable request by the jury for the re-reading of testimony." *State* v. *Couch*, 103 Idaho at 208, 646 P.2d at 450. The concern of the Idaho court was to ensure that none of the parties suffered prejudice as opposed to enforcing literal compliance with their statute, which is identical to ours. "From the jury's request for a transcript of the tape recording, the court could infer the jury had some disagreement concerning the evidence. The jury had a right to review this evidence." *Id.* Likewise, in *Lovelady* v. *State*, 478 P.2d 983 (Okla. Crim. App. 1970), the court, after noting the discretionary role of the trial court in granting the request, held that because the jury requested three times to rehear testimony "there must have been some disagreement between them as referred to in the statute."

We acknowledged the discretionary aspect of section 16-89-125(e) in *Gardner* v. *State*, 263 Ark. 739, 569 S.W.2d 74 (1978). After reviewing the discretionary standards in other jurisdictions, we adopted the approach that "the trial judge should honor any request of a jury to hear specific evidence in the absence of some compelling reason why it should not be granted and that the action of the trial court in doing so should not be reversed in the absence of a manifest abuse of discretion."

In sum, the question of whether a jury is in sufficient disagreement or confusion to merit the requested information should be examined on a case by case basis. While we are not in favor of granting the request merely to refresh a juror's recollection, (*see Galiger* v. *Hansen*, 133 Mont. 34, 319 P.2d 1051 (1957)), we do not feel a literal argument must arise between jurors before they can receive requested evidence. Here, the jury was plainly in doubt regarding Mr. Moore's testimony and stated there were questions concerning the time frame involved. This was enough to justify a replaying of the evidence under section

16-89-125(e) and under the standard we established in *Gardner* v. *State, supra.*

The thrust of our reasoning was well expressed by the New Jersey Supreme Court in *State* v. *Wolf,* 44 N.J. 176, 207 A.2d 670 (1965):

> When a jury retires to consider [its] verdict, [its] discussion may produce disagreement or doubt or failure of definite recollection as to what a particular witness said in the course of his testimony. If they request enlightenment on the subject through a reading of his testimony, in the absence of some unusual circumstance, the request should be granted. The true administration of justice calls for such action.

Under the circumstances in this case, we hold that the jury's request to rehear testimony sufficiently indicated "disagreement" under our statute. Also, we note that no prejudice was suffered by McKinney as a result of the repetition of testimony since both the direct and cross-examination portions were replayed; nor was there any effort by the jury to spotlight a small bit of evidence which could work to McKinney's detriment. See *Mack* v. *State,* 265 Ark. 257, 577 S.W.2d 596 (1979).

Affirmed.

GLAZE, J., concurs.