Norfolk
GEORGE ALPHA KENNEDY
v.
COMMONWEALTH OF VIRGINIA
No. 1128-92-1
Decided June 28, 1994

COUNSEL

James T. Baker, for appellant.

Jerry P. Slonaker, Senior Assistant Attorney General (Stephen D. Rosenthal, Attorney General; Leah A. Darron, Assistant Attorney General, on brief), for appellee.

OPINION

**BRAY, J.**—George Alpha Kennedy (defendant) was convicted by a jury of conspiracy to distribute cocaine, possession of a firearm by a convicted felon, and possession of less than one-half ounce of marijuana. On appeal, he complains that the trial court erroneously acceded to the jury's request, made during its deliberations, to rehear the testimony of two witnesses. We disagree and affirm the convictions.

Although the sufficiency of the evidence is not an issue in this appeal, a review of the record is necessary to explain our disposition of defendant's argument.

On September 3, 1991, Officer Samuel E. Nellums of the Vice and Narcotics Division of the Norfolk Police Department was engaged in an undercover investigation of illicit drug activity in that city. While soliciting contacts with "drug dealers or drug users," Nellums was approached by Kevin Shore (a/k/a Kevin Shore Meekins). Shore asked Nellums "what [he] was looking for," and Nellums answered, " 'A 20-piece,' " a "street term[ ]" meaning "$20 worth of crack cocaine." Shore assured Nellums that he could provide the drug and directed him to a nearby motel. While Nellums waited in his vehicle, Shore entered Room 101 of the motel and returned with the cocaine. Using identified currency, Nellums paid Shore for the drug and watched as he re-entered Room 101. At Shore's request, Nellums again waited, and Shore was arrested upon his return to the vehicle.

A search of Shore's person incidental to his arrest disclosed no money, and Investigator J.D. McFatter, a participant in the "arrest team," proceeded to Room 101 and knocked at the door. Defendant responded, and, after McFatter identified himself and advised defendant "why [they] were there," defendant orally waived his *Miranda* rights and consented to a search of the motel

room. Items discovered in the room by police included a "38 Smith & Wesson snub-nosed revolver . . . with four . . . bullets" and a "bag" of suspected marijuana.

McFatter testified that defendant, when questioned at the scene, admitted engaging the room under his "business name," George Wilson, and willingly "produced [$126] from his left front pocket," which included the cash Nellums had previously given to Shore. In a later written statement, defendant admitted ownership of the revolver and marijuana. He attributed the identified money to a "Mr. Mickens [Meekins]" who had "come to the room and asked for change."

At trial, Special Agent Thomas S. Sochor of the United States Immigration Service testified for the Commonwealth. Sochor described his "primary duties" as the apprehension of "aliens . . . deportable in the United States." Without objection, Sochor recalled a prior encounter with defendant, which occurred during an unrelated investigation of the "identities and alienage[s]" of other persons. On that occasion, defendant initially identified himself as "George Wilson" but later "recanted" and provided his "true" name. Sochor further testified, also without objection, that he subsequently determined that defendant "may be a deportable alien because of previous convictions" and that he obtained a "certified copy of [defendant's] record of convictions" for "use[ ] in deportation proceedings."[1] He noted that police had contacted him following defendant's arrest because they believed defendant "was wanted" by Sochor.

Defendant testified and claimed that he was sharing the motel room at the invitation of a "Mr. Williams" at the time of arrest. He admitted exchanging money with "a guy" in room 102 shortly before McFatter's arrival but denied any involvement with the cocaine, marijuana, or firearm. Defendant further testified that Sochor was "mistakenly identifying" him.

Shortly after the jury commenced its deliberations, the trial judge received an unsigned note from the jury room which read, "(1) We need the immigration officer's testimony" and "(2) We need the defendant's testimony." In response, and with the ap-

---

[1] Defendant had not objected to the earlier introduction of this document through another witness.

proval of counsel, the court advised the jury that the attorneys and court reporter had been notified of the request and summoned to the courtroom and instructed them to "please continue deliberating." Shortly thereafter, the trial judge received a second note, signed by the jury foreman, which reported, "We can not [sic] come to agreement without testimony requested earlier. Request testimony be provided as quickly as possible."

Upon arrival of counsel, the trial judge assembled the jury in open court, intending to recess the proceedings and consider the issue with counsel. The foreman then "state[d] emphatically [that] without [the requested] testimony [the jury would] not reach a verdict." In answer to specific inquiries from the court, the foreman first requested a reading of defendant's testimony only with respect to the "denominations of bills that [defendant] gave in response to [the] request for change" but, later, added, "We would like . . . to have [defendant's] entire testimony as he stated when he was on the bench." The foreman also confirmed that the jury wished to rehear the testimony of Sochor. Further inquiry of the foreman revealed that "a difference of memory," of "recall," among the jurors had prompted the requests.

Defendant objected to a reading of any testimony as "overemphasizing and prejudicial." The Commonwealth, also concerned with an "overemphasis" of testimony, suggested that "all" the evidence be repeated to the jury. After an extended colloquy with counsel and a thorough consideration of the issue, the trial court permitted the court reporter to read to the jury "everything that the defendant said, the direct and cross-examination, and everything Investigator Sochor said." The trial court observed, "[Sochor's] testimony was probably one fifth to one seventh of the defendant's," but "that's what they want, and I think that's fair, and . . . I intend to give it." When defendant further argued that portions of Sochor's testimony went "beyond the parameters of what involved the defendant and this issue before the Court," the court reminded defendant that he had not objected to this evidence initially, and it was "too late . . . now."

The jurors were again convened in open court and informed by the trial judge that the court reporter was "going to read for [them] the requested testimony." The judge cautioned the jury, however, that it "[did not] want to give special emphasis" to this evidence and instructed, "[Y]ou should regard all the testimony of

all the witnesses and not . . . limit yourself to the testimony that you will be given to review." Sochor's entire testimony and a portion[2] of defendant's testimony were then read to the jury by the court reporter.

Defendant contends on appeal that it was error for the jury to rehear the testimony of Agent Sochor because it "was so prejudicial by its very nature [that its repetition] constitute[d] a denial of his right to a fair and impartial trial." This argument apparently presents an issue of first impression in Virginia.[3]

■ "Whether a jury, after retirement, may, upon their request have a particular portion of the evidence read to them is ordinarily a matter resting in the sound discretion of the trial court." 11B Michie's Jurisprudence *Jury* § 57 (1986) (citing *Nixon v. Shaver*, 176 S.E. 849, 851 (W. Va. 1934)). This approach leaves the issue to the determination of the trial judge, based upon a consideration of the "particular circumstances present," and is in accord with the majority of jurisdictions. Annotation, *Right to Have Reporter's Notes Read to Jury*, 50 A.L.R.2d 178 (1956); *see, e.g., Roper v. State*, 608 So. 2d 533, 535 (Fla. Dist. Ct. App. 1992); *Nelson v. State*, 431 S.E.2d 450, 452 (Ga. Ct. App. 1993); *Smiley v. State*, 579 N.E.2d 136, 137-38 (Ind. Ct. App. 1991); *State v. Spaulding*, 296 N.W.2d 870, 877-78 (Minn. 1980); *State v. Lee*, 439 S.E.2d 547, 571 (N.C. 1994).[4]

■ The underlying rationale for this treatment of the question was recently restated in *State v. Jenkins*, 845 S.W.2d 787 (Tenn. Crim. App. 1992).

"When a jury retires to consider their verdict, their discussion may produce disagreement or doubt or failure of definite recollection as to what a particular witness said in the course

---

[2] The record indicates that the foreman interrupted the reading of defendant's testimony and advised, "[W]e are satisfied right to that point." The referenced "point" is not identified in the record, but the reading of defendant's testimony then concluded without objection by defendant.

[3] *But see Jackson v. Commonwealth*, 60 Va. (19 Gratt.) 656, 666 (1870) (holding that, subsequent to a jury's retirement "to consult upon their verdict," the court erred in "permitting any part of the testimony taken down to be read over to the jury *in the absence of the accused*" (emphasis added)).

[4] The practice is also approved by the American Bar Association, "[w]henever the . . . request is reasonable." 3 ABA *Standards for Criminal Justice* § 15-4.2 (2d ed. 1986 Supp.).

of his testimony. If they request enlightenment on the subject through a reading of his testimony, in the absence of some unusual circumstance, the request should be granted. The true administration of justice calls for such action. Where there is a doubt in the minds of jurors as to what a witness said, it cannot be prejudicial to anyone to have that doubt removed by a rehearing of his testimony. . . . If . . . a jury is to be considered intelligent enough to be entrusted with powers of decision, it must be assumed they have sense enough to ask to have their memories stimulated or refreshed only as to those portions of the testimony about which they are in doubt or disagreement."

*Id.* at 792-93 (quoting *State v. Wolf*, 207 A.2d 670, 675-76 (N.J. 1965)). A court may not "simply refuse to grant the jury's request for fear of placing too much emphasis on the testimony of one or two witnesses." *People v. Howe*, 221 N.W.2d 350, 352 (Mich. 1974). "If there is any emphasis being placed on the evidence, it is being placed there by the jury." *Jenkins*, 845 S.W.2d at 792.

Though we find the majority rule preferable to a needlessly complex or restrictive solution, and adopt it here, we caution that the practice is appropriate only to limited circumstances and should be carefully undertaken by trial courts on a case-by-case basis. It would be difficult to catalog all factors pertinent to a resolution of such jury requests or to enunciate a bright line test suitable to every instance; however, relevant circumstances include: the threat of "unbalanced testimonial emphasis," *United States v. Pimental*, 645 F.2d 85, 87 (1st Cir. 1981), the length of the testimony in issue, *Hill v. State*, 151 S.E.2d 818, 820 (Ga. Ct. App. 1966), the time already consumed in jury deliberation, the complexity of the trial and related issues, and the nature and specificity of the evidence subject of the testimony, *People v. Sanders*, 469 N.E.2d 287, 291 (Ill. App. Ct. 1984). Moreover, the probative value and benefit of the testimony in issue to the factfinding process must always be weighed against its prejudicial effect to the accused, if any. *See United States v. Thomas*, 875 F.2d 559, 562 n.2 (6th Cir.), *cert. denied*, 493 U.S. 867 (1989); *People v. DeRossett*, 604 N.E.2d 500, 515-16 (Ill. App. Ct. 1992).

Here, the testimony of interest to the jury was specifically identified and relevant to matters in issue. Continued deliberations,

urged by the court following the request, had failed to resolve the impasse, and the trial judge was pointedly advised that the jury "[would] not reach a verdict" without an opportunity to rehear the designated evidence. The testimony ultimately read to the jury was neither lengthy nor complex and included evidence introduced by both the Commonwealth and defense. Before the reading, the court prudently and correctly instructed the jury to avoid any undue emphasis in its consideration of that evidence. *See Fitchard v. State*, 424 So. 2d 674, 677 (Ala. Crim. App. 1982) (trial judge cautioned the jury to consider the repeated testimony "in conjunction with all of the other evidence" and had taken "*all possible precautions* to ensure that no undue importance" would attach to it (emphasis added)). " 'Unless the record shows to the contrary, it is to be presumed that the jury followed an explicit cautionary instruction promptly given.' " *Albert v. Commonwealth*, 2 Va. App. 734, 741, 347 S.E.2d 534, 538 (1986) (quoting *LeVasseur v. Commonwealth*, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983), *cert. denied*, 464 U.S. 1063 (1984)).

■ Under such circumstances, we find that defendant has failed to establish that the trial judge abused her discretion in permitting the reading. *See Wansley v. Commonwealth*, 205 Va. 419, 421, 137 S.E.2d 870, 872 (1964), *cert. denied*, 380 U.S. 922 (1965). Appellate courts will not interfere with the discretionary decisions of a trial court unless it is clear that such discretion has been abused. *Parish v. Commonwealth*, 206 Va. 627, 631-32, 145 S.E.2d 192, 195 (1965), *cert. denied*, 384 U.S. 942 (1966); *see Slayton v. Commonwealth*, 185 Va. 357, 367, 38 S.E.2d 479, 484 (1946) (discretion implies " 'conscientious judgment, not arbitrary action,' " based upon the " 'reason and conscience of the judge' " under the law and circumstances (citations omitted)).

Defendant further argues that the court erred in declining to redact portions of Sochor's "prejudicial testimony that had previously found its way into the . . . record."[5] Although defendant failed to specify before the trial court those portions of this testimony of concern, the trial judge, without objection, addressed only the references to defendant's prior felony record, noting that this evidence was otherwise properly before the jury as an element of the firearm offense. While the prejudicial effect to defendant

---

[5] The record discloses no objection by defendant during Sochor's original testimony.

which might result from a repetition of such evidence was a factor for the trial judge to consider in ruling on the jury's request and redaction an available remedy, we cannot find that its inclusion in the reading constituted an abuse of discretion.

Accordingly, we affirm the convictions.

*Affirmed.*

Baker, J., and Barrow, J., concurred.