**STATE of Iowa, Plaintiff–Appellee,**

v.

**Tracy K. MILLER, Defendant–Appellant.**

No. 94–425.

Court of Appeals of Iowa.

May 30, 1995.

Francis C. Hoyt Jr., West Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Mary Tabor, Asst. Atty. Gen., Kevin Parker, County Atty., and John Criswell, Asst. County Atty., for appellee.

Heard by HABHAB, P.J., and CADY and HUITINK, JJ.

CADY, Judge.

This is an appeal by Tracy Miller following his convictions for delivery of drugs and failure to affix a drug tax stamp. Miller claims the convictions must be reversed because evidence was illegally seized from his premise, insufficient evidence was presented to support the convictions, and prejudice resulted when the trial court allowed tape recordings to be replayed for the jury during deliberations. We reject each claim and affirm the convictions.

The important facts of this case begin with the arrest of Richard Edwards on June 1, 1993. Edwards was arrested at a motel after delivering nine ounces of cocaine to undercover agent Beth Rouse. Edwards named his source as Tracy Miller. Edwards was released after he agreed to meet officers the next morning to assist in the investigation of Miller.

When Edwards did not show up as agreed, Rouse called his home and spoke to his wife, Jody. Rouse pretended to be a cocaine dealer. The conversation was recorded. Jody mentioned she went with her husband the night before to get "it" and said "the guy he got it from just called me this morning" because Richard failed to call to let him know everything was all right.

Edwards eventually met with officers and placed two telephone calls to Miller. Edwards was under the influence of cocaine at the time. No direct mention of drugs or money was made, but Edwards arranged to meet Miller at Miller's residence "to get the same amount." These conversations were tape recorded.

Officers wired Edwards with a body transmitter, provided him with cash for a cocaine transaction, and followed him to Miller's house in several vehicles. A white van had been dispatched to Miller's house earlier for surveillance. En route, Edwards met Miller's vehicle traveling in the opposite direction. Edwards, with the law enforcement following turned around and eventually caught up with Miller.

Edwards exited his car and went to talk with Miller. He asked Miller if he wanted the money. Miller responded not at this time. Miller told Edwards about seeing a white van parked near his residence. He told Miller he believed they had been followed and were being watched. Law enforcement moved in and arrested Miller.

Rouse applied for a search warrant for Miller's residence and out buildings. By affidavit, Rouse related the events of her earlier drug buy from Edwards. She also characterized the taped telephone conversation between Miller and Edwards to mean that Miller told Edwards to come to his residence to "drop off the money and to talk about additional drug transactions." Additionally, Rouse stated that in 1991 a UPS package was intercepted containing $50,000 Miller was sending to his brother-in-law in Florida and that Miller and his brother-in-law were involved in drug dealing. She further stated that two persons, Thomas Barton and Dennis Wentland, formerly investigated or arrested for drug violations, were stopped en route to Miller's residence on April 6, 1993 carrying $5,000 in cash. The warrant was issued. Officers subsequently seized a scale and a

cutting agent from Miller's residence. No drugs or cash were found.

Miller was charged with two counts of delivery of cocaine and/or simulated cocaine and one count of failure to affix a drug tax stamp. His motion to suppress the seized items was overruled, and the case proceeded to trial.

Shortly after the jury began deliberating, it asked to have the recordings of the phone conversations which had been admitted into evidence. The district court consulted with counsel and informed the jury it would have to rely upon its recollection of the conversations. The jury renewed its request later in the day. The judge inquired into the request and learned the jury believed they would have another opportunity to hear the tape, and that some jurors felt the tape was "very muffled" when played at trial. Over Miller's objection, the district court allowed the jury to listen to the tape recordings in the courtroom.

Miller was convicted of one count of delivery and with failure to affix a drug tax stamp. The district court sentenced Miller to a term not to exceed ten years on the delivery charge and a term not to exceed five years on the tax stamp charge, the sentences to be served concurrently.

Miller appeals.

### I. Jury Request

Defendant first argues the trial court abused its discretion in granting the jury's request to hear the tape recordings during the deliberations. He claims the court's action caused prejudice by over emphasizing the taped evidence, and deprived him of the opportunity to develop strategy to confront the emphasis during closing argument.

■ Trial courts have considerable discretion to grant or deny a request by the jury to replay tape recordings during deliberations. *State v. Baumann*, 236 N.W.2d 361, 366

(Iowa 1975). This discretion is written into Iowa Rule of Criminal Procedure 18(5)(g), which establishes a procedure for courts to follow in providing information to the jury during deliberations if they encounter "any disagreement as to any part of the testimony."[1]

■ Many factors are available to help determine whether to grant or deny a request to review certain evidence or recordings in any particular case. These factors include the reasonableness of the request, the ease or difficulty in complying with the request, and what is likely to be gained or lost. *United States v. Argencourt*, 996 F.2d 1300, 1305 (1st Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 731, 126 L.Ed.2d 694 (1994). Other recognized considerations include the threat of unbalanced emphasis on the testimony, the length of the requested testimony, the time consumed in jury deliberations prior to the request, the complexity of the issues in the case, and the nature and specificity of the requested evidence. *Kennedy v. Commonwealth*, 18 Va.App. 543, 445 S.E.2d 699, 703 (1994). The probative value of the requested testimony to the fact finding process must be weighed against any prejudice to the accused. *Id.*

■ Considering all the circumstances presented in this case, we believe the trial court acted within its discretion. The request was specific and relevant to the fact finding process. It was reasonable in view of the poor quality of the voices on the tape. The tapes were easily accessible. They were not lengthy or complex. Moreover, we are unable to conclude that any testimony was unfairly overemphasized by granting the request. The initial denial of the request by the trial court failed to deter the jury from making a second request. Instead of placing undue emphasis, the repeated request by the jury was, most likely, compatible with a re-

1. No claim was made at trial or on appeal that the request by the jury to review the tape recordings was insufficient to signal a "disagreement as to any part of the testimony." *See, e.g., McKinney v. State*, 303 Ark. 257, 797 S.W.2d 415 (1990) (jury "question" about certain testimony during deliberations was sufficient to indicate "disagreement" under statute allowing jury to review testimony); *State v. Meyers*, 426 N.W.2d 614 (Iowa 1988) (jury request to review portions of the evidence signals possible disagreement by the jurors). *But see Moore v. State*, 874 S.W.2d 671 (Tex.Crim.App.1994) (simple request to review testimony does not reflect a disagreement to support granting request).

sponsible and conscientious concern that the tapes be understood and evaluated as carefully as possible. *Argencourt,* 996 F.2d at 1306.

If justice is the goal of the trial process, an enlightened and informed jury is essential to both sides of the case. When doubt arises in the minds of the decision makers concerning what was said in tape recordings, it is difficult to accept, absent unusual circumstances, that either party would be prejudiced by a procedure designed to remove that doubt. *See Kennedy,* 445 S.E.2d at 703 (quoting *State v. Wolf,* 44 N.J. 176, 207 A.2d 670 (1965)); *State v. Jenkins,* 845 S.W.2d 787, 793 (Tenn.Crim.App.1992).

We specifically reject the notion that Miller was prejudiced by being denied the opportunity to adjust his trial strategy to confront the jury's additional opportunity to hear the tapes. Miller adopted his trial strategy knowing the law gave the trial court discretion to grant a jury request to rehear evidence during deliberations.

## II. Sufficiency of Evidence

Miller next challenges the sufficiency of the evidence to support his conviction. In considering this claim, we review the evidence in a light most favorable to the state. *State v. Thornton,* 498 N.W.2d 670, 673 (Iowa 1993). We give the state all legitimate inferences and presumptions which may be reasonably deduced from the evidence. *Id.* Evidence is "substantial" if it would convince a rational trier-of-fact that the accused is guilty beyond a reasonable doubt. *State v. Blair,* 347 N.W.2d 416, 418–19 (Iowa 1984).

Miller argues there was insufficient evidence to support the delivery element of the crime. He points out that no drugs were found on his property during the search, and no drugs or money were mentioned during the recorded conversations with Edwards. Although Edwards testified he purchased cocaine from Miller, Miller denied he ever provided drugs to Edwards.

We believe the verdict is supported by substantial evidence. The jury was free to disbelieve Miller's version of the events in weighing the evidence in the case. *State v. Pletka,* 310 N.W.2d 525, 527 (Iowa 1981). It

was also free to give more credibility to the testimony of Edwards and his wife, who implicated Miller as the supplier of the drugs. The testimony of Edwards was detailed, and corroborated by the search warrant, the investigation of agent Rouse, and the taped telephone conversations.

## III. Search Warrant

Miller's final claim is that the search warrant application did not support a finding of probable cause. He claims agent Rouse falsely characterized the telephone conversation as a drug transaction, the issuing judge failed to make a credibility finding on the confidential informant, Edwards' statements were unreliable, and much of the information was too remote or unreliable to aid in the probable cause determination.

We review issues challenging the constitutionality of the procedures used to obtain search warrants de novo. *State v. Niehaus,* 452 N.W.2d 184, 187 (Iowa 1990). We look to whether a reasonable person would believe a crime was committed on the premises to be searched or evidence of a crime would be located on the premises. *State v. Weir,* 414 N.W.2d 327, 330 (Iowa 1987). Under these standards, we find the search warrant was properly issued.

To successfully challenge the issuance of a warrant based on false information, the challenger must show that the affiant was purposefully untruthful in the application concerning a material fact or acted with reckless disregard for the truth. *See Niehaus,* 452 N.W.2d at 186–87. The evidence in this case was insufficient to support either prong of the standard.

It is not unusual for conversations over drug transactions to require some interpretation to be understood. This may be due to vague or unique language, or the meaning of a conversation may not be evident until considered in context with other events or conversations. Considering all the surrounding circumstances, we believe the summarization of the telephone conversations between Miller and Edwards was not done with reckless disregard for the truth, nor was

there any evidence that the officer was purposely untruthful. To the contrary, the interpretation, under the circumstances, was reasonable.

 We also reject the remaining claims by Miller. The statements by Edwards were credible for several reasons, including that they were against his penal interests. *See United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723, 734 (1971) (stating admission of crimes carries an indicia of credibility sufficient to support probable cause to search). *See Also* Wayne Lafave, *Search and Seizure,* § 3.3(c), at 648–49 (1987). Furthermore, the information from the confidential source, the information concerning Miller's criminal history, and the information about the UPS shipment could be deleted from the application without impacting the finding of probable cause. Finally, the history of a drug transaction two months earlier, in connection with the other circumstances, was not too remote to consider in determining probable cause.

**AFFIRMED.**