COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Annunziata and Clements
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1828-02-1      JUDGE JEAN HARRISON CLEMENTS
                                        NOVEMBER 25, 2002
YASER MOHAMMED JAWAD


        FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                Frederick H. Creekmore, Judge

        Jennifer R. Franklin, Assistant Attorney
        General (Jerry W. Kilgore, Attorney General;
        Susan M. Harris, Assistant Attorney General,
        on brief), for appellant.

        Erin J. Goodman (George Holton Yates; George
        Holton Yates & Assoc., on brief), for
        appellee.


    The Commonwealth of Virginia appeals from an order of the

circuit court admitting Yaser Mohammed Jawad to pre-conviction

bail.  On appeal, the Commonwealth contends the trial court abused

its discretion in finding the evidence sufficient to rebut the

presumption that Jawad was a danger to the public and presented a

flight risk.  We disagree and affirm the judgment of the trial

court.

    As the parties are fully conversant with the record in this

case and because this memorandum opinion carries no precedential

_____

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

value, this opinion recites only those facts and incidents of the proceedings as necessary to the parties' understanding of the disposition of this appeal.

On appeal, we review a trial court's decision whether to grant bail pre-conviction for abuse of discretion. See Fisher v. Commonwealth, 236 Va. 403, 411, 374 S.E.2d 46, 51 (1989). In deciding whether to grant or deny bail, the trial court must exercise "not an arbitrary discretion, but a sound judicial discretion." Judd No. 2 v. Commonwealth, 146 Va. 276, 277, 135 S.E. 713, 714 (1926). "In reviewing an exercise of discretion, we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." Beck v. Commonwealth, 253 Va. 373, 385, 484 S.E.2d 898, 906 (1997). We will not disturb the trial court's discretionary decision unless "it is clear that such discretion has been abused." Kennedy v. Commonwealth, 18 Va. App. 543, 549, 445 S.E.2d 699, 703 (1994). We are further mindful that the "credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." Crawley v. Commonwealth, 29 Va. App. 372, 375, 512 S.E.2d 169, 170 (1999).

Code § 19.2-120 governs pre-conviction bail. Code § 19.2-120(A) provides that a person charged with a criminal offense shall be admitted to bail unless the judicial officer determines there is probable cause to believe the accused will not

-

appear as required or constitutes an unreasonable danger to himself or the public.  Code § 19.2-120(B) provides, however, that "the judicial officer shall presume, subject to rebuttal, that no . . . conditions will reasonably assure the [accused's] appearance . . . or the safety of the public" if the accused is charged with, inter alia, first degree murder.  Code § 19.2-120(C) provides that, in determining whether, "for the purpose of the rebuttal of the presumption against bail described in subsection B, whether there are conditions of release that will reasonably assure the appearance of the [accused] as required and the safety of the public," the trial court must consider the "following factors and such others as it deems appropriate":

> 1.  The nature and circumstances of the offense charged;
>
> 2.  The history and characteristics of the [accused], including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> 3.  The nature and seriousness of the danger to any person or the community that would be posed by the [accused's] release.

Here, Jawad was charged with first degree murder and the use of a firearm in the commission of first degree murder.  Thus, in considering Jawad's motion for pre-conviction bail, the trial court had to presume, subject to rebuttal, that no conditions of

-

bail would reasonably assure Jawad's appearance at trial or the safety of the public. Implicitly finding, however, that Jawad had successfully rebutted that presumption, the trial court granted Jawad's motion for pre-conviction bail. The court set bond at fifty thousand dollars, with surety, on each charge. The conditions of bond included that Jawad not have any firearms in his possession or surroundings and that he not work in a convenience store.

On appeal, the Commonwealth contends the trial court erred in finding, based on the factors set forth in Code § 19.2-120(C), that the presumption described in Code § 19.2-120(B) was rebutted. "[T]he court's action," the Commonwealth argues, "cannot be reconciled with the facts from the record or any of their probable deductions." In support of that argument, the Commonwealth asserts the evidence presented at the bail hearing showed that Jawad (1) was a citizen of Pakistan with extensive connections abroad and limited connections here; (2) was no longer employed; (3) lied in the district court about his continuing family ties and financial resources in the community and in Pakistan; (4) fired the weapon twice, with one shot hitting the victim "right between the eyes"; and (5) previously exhibited violence when he chased a suspected shoplifter from his store with a gun. On these facts, the Commonwealth maintains, Jawad's tendering of his expired passport to the trial court was "meaningless" and the evidence was insufficient to rebut the presumption that Jawad is a

-

danger to the public and a flight risk.  Accordingly, the
Commonwealth concludes, the trial court's admission of Jawad to
bail was a clear abuse of discretion.

At the bail hearing, Antwoin Boyd, an eyewitness to the
shooting, testified for the Commonwealth.  Boyd worked at a barber
shop which was part of the shopping center owned by Jawad and
which was two doors down from Jawad's convenience store.  He
stated that, upon leaving the barber shop, he saw two men
"tussling" and "wrestling" in front of the door to Jawad's store.
They banged into the door of Jawad's store twice and were causing
a "big commotion."  Nobody was entering or leaving the store
because of the fighting.

From approximately fifty feet away, Boyd saw Jawad come out
of the store and attempt to pull the two men apart.  Jawad was
yelling and cursing at the men.  One of the men involved in the
fighting, the victim in this case, told Jawad they were cousins
and were not fighting.  Jawad continued to try to separate the
men.  The victim then stopped fighting with his "cousin" and
started "fussing with . . . Jawad face to face."  Jawad spat in
the victim's face.  "[V]ery upset" and "angry," the victim spat in
Jawad's face and attempted to attack him, but his "cousin" held
him back.  Jawad went back into his store but came back out and
"continued to fuss with" the victim.  Another man who had been
riding with the victim, came up to the victim and attempted to
lead him away.  The victim started to walk to the car.

-

At that point, according to Boyd, Jawad went back inside his store and got a gun. When Jawad came back outside, he shot the gun once in the air. Jawad and the victim continued to "fuss" with each other while standing twenty feet apart. Jawad then ran up and pinned the victim between the car and the door. After being dared by the victim three times to shoot him, Jawad stepped back and shot the victim in the face.

Boyd also testified that, eight or nine months before the shooting, he had seen Jawad chase after a suspected shoplifter with a gun.

The Commonwealth conceded the victim had a lengthy felony record, including two weapons convictions. Jawad presented no evidence about the circumstances of the crimes charged; however, two security guards who knew the victim testified he was a violent person. Jawad's attorney told the trial court there would be a factual question at trial about "whether or not the defendant was the aggressor or whether the alleged victim engaged in conduct that brought about his own demise."

Jawad testified on his own behalf at the bail hearing. According to his testimony, he has never "failed to appear for anything in court" and intends "to appear for all court appearances" in this case. He is married to an American citizen and lives with his wife, fourteen-month-old son, father, mother, and brother in a home in Chesapeake owned by his parents and brother. He has lived in the United States consistently since

-

1994 and in Chesapeake since 1999.  He has no immediate family still living in Pakistan.  Nearly thirty-two years of age, he is in good physical health, has never been treated for any mental conditions, and has never abused drugs or alcohol.  He has no prior criminal record.

Jawad and other members of his family own the shopping center where the shooting occurred.  An electrical engineer by education, Jawad managed the convenience store in the shopping center, but discontinued working there after the shooting.  He intends to look for "a separate line of work" upon his release on bail.  Outside of his interest in the shopping center, his financial resources are minimal.  He has no money or property in Pakistan.

A citizen of Pakistan, Jawad surrendered his Pakistani passport to the trial court.

When asked about inconsistent testimony regarding his financial holdings that he gave in a prior hearing in the general district court, Jawad explained he had misunderstood the earlier questions as being general inquiries about his family's resources rather than his alone.  Thus, he explained, he had mistakenly answered those questions "as a family."

Robert Lindemann, the family's business attorney who had been practicing law for twenty-three years, testified to Jawad's reputation for honesty and fair dealing.  He testified that, in all his dealings with him, Jawad "always kept his word on anything he said he was going to do."  Jawad, Lindemann said, was a hard

-

worker who, together with his family, transformed the shopping center from a facility in disrepair to a financially successful operation. Lindemann also testified to Jawad's reputation in the community for peacefulness. He opined that Jawad would not flee and would comply with all terms of bond.

Several members of Jawad's family, his wife's family, his employees, customers of his store, and others in the community who knew him, including his accountant, were present at the hearing and identified to the court as appearing on his behalf. They did not testify.

Upon our review of the record, we cannot say the trial court abused its discretion in finding the evidence sufficient to rebut the presumption in Code § 19.2-120(B) that Jawad was a danger to the public and a flight risk. Although the Commonwealth's evidence demonstrated the violent nature of the crimes charged, Jawad's evidence, which the trial court clearly accepted, demonstrated that Jawad had no history of failing to appear at court proceedings, had strong family and financial ties to the community of the forum, had no criminal record, and had a reputation for honesty and peacefulness in the community. The trial court plainly believed, in considering the factors in Code § 19.2-120(C), that Jawad's history and characteristics, and the lack of danger he would pose to the community if released, outweighed the circumstances and nature of the offenses charged. Because the record fairly supports the trial court's action, we

-

hold the trial court's decision to grant pre-conviction bail was not an arbitrary discretion, but a sound judicial discretion.

Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>